Laurent R.G. Badoux (SBN: 020753)
BUCHALTER, a Professional Corporation
16435 North Scottsdale Road, Suite 440
Scottsdale, AZ 85254-1754
Telephone: (480) 383-1800
Fax: (480) 824-9400
E-mail: lbadoux@buchalter.com
*Attorneys for Plaintiffs*

# UNITED STATE DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Martin Gillard; Darren Gurner,<br><br>  Plaintiffs,<br><br>v.<br><br>Good Earth Power AZ, LLC, an Arizona limited liability company; ZR FEC Ltd., a BVI company; Concord Blue Eagar, LLC, formerly known as Concord Blue Development USA, LLC, an Arizona limited liability company; Concord Blue USA, Inc., a Delaware corporation; Jason Rosamond and Maya Minkova, husband and wife; Alawi Zawawi<br><br>  Defendants. | Case No. _____<br><br>**COMPLAINT** |

Plaintiffs Martin Gillard ("Gillard"), and Darren Gurner ("Gurner"), for their Complaint against Defendant Good Earth Power AZ, LLC ("GEPAz"), allege and state as follows:

1. This civil action seeks to prevent immediate and irreparable harm that Plaintiffs now suffer and/or are about to suffer as a result of GEPAz's breach of contract, as well as violations of Arizona and federal law.

## PARTIES AND JURISDICTION

2. Gillard is a former employee of GEPAz, and currently resides in the United Kingdom.

3. Gurner is a former employee of GEPAz and currently resides in the United Kingdom.

4. GEPAz is an Arizona limited liability company authorized to do business and doing business in Arizona. GEPAz conducted business through a host of related entities in which it or one of its corporate parents held a controlling interest, including Seymour International Group, Seymour Forest Products, Lumberjack Timber, Just Right, Good Earth Trucking, FEC Logging, etc., all of which contributed revenues to GEPAz and/or provided compensation to Plaintiffs for performance of services.

5. ZR FEC Ltd. is a British Virgin Island limited company doing business in Arizona and with an Arizona Employer Identification Number. Upon information and belief, ZR FEC maintains a 70% ownership share in GEPAz. ZR FEC has three parent holding companies, ZR Telecoms Ltd., JARZ Technologies Ltd. and JARZ Holdings, International Ltd. All four British Virgin Island limited companies were stricken from the BVI Register of Companies on or about May 3, 2016 for non-payment of registration fees.

6. Upon information and belief, Rosamond and Zawawi each owned a 50% interest in JARZ Holdings Int'l. In turn, JARZ Holdings Int'l owned 100% of JARZ Technologies Ltd, which itself owned 100% of ZR Telecoms, which owned 100% of ZR FEC.

7. Concord Blue USA, Inc. is a Delaware corporation, with a principal place of business and business registration in California.

8. Upon information and belief, Concord Blue USA owns a 10% share of GEPAz.

9. Concord Blue Eagar, LLC, formerly known as Concord Blue Development USA, LLC is an Arizona limited liability company.

10. Upon information and belief, Concord Blue Development USA owns a 20% share of GEPAz.

11. Concord Blue Eagar and Concord Blue USA are referred to jointly herein as the Concord Defendants. The Concord Defendants acquired a 30% stake in GEPAz in 2013, including any liabilities and debts GEPAz may have incurred.

12. Jason Rosamond and Maya Minkova became husband and wife in 2013, and, at all times material hereto, were residents of Maricopa County.

13. Jason Rosamond held at all times relevant to this action a significant ownership interest in GEPAz and also served as its chief executive. In this capacity, Jason Rosamond had the authority to hire and fire employees, including Plaintiffs, direct the work, set compensation and all other conditions of employment of Plaintiffs.

14. Maya Minkova was, at all times material to this action, and remains vice-president of GEP Ltd with oversight responsibility, inter alia, for contract compliance, community relations with GEPAz and oversight for portions of the forest project and development of the Heber and Williams sawmills.

15. In addition to their separate actions, Rosamond and Minkova acted in furtherance of the interests of their marital community at all times relevant to this action.

16. Alawi Zawawi held at all times relevant to this action a significant ownership interest in GEPAz, and its parent entities, up to and including GEP Ltd and also served as one of the Good Earth Power group's top executives and figurehead. Upon information and belief, Defendant Zawawi is and was at all times material hereto a current resident of the Sultanate of Oman or of the United Kingdom.

17. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1367. Plaintiff alleges claims under the Stored Communications Act, 18 U.S.C. §§

BUCHALTER
A PROFESSIONAL CORPORATION
SCOTTSDALE

BN 28572730v1

2701, *et seq.*, as well as other state statutory and common law claims.

18. Venue is proper in the District Court for the District of Arizona pursuant to 28 U.S.C. §§ 1391(b) and (c) in that a substantial part of the events giving rise to this action occurred in this District, and the Defendant is doing business in this District, particularly as it pertains to the performance of the contract with the US Forestry Service for the management of forests in the northern part of the state of Arizona.

### FACTUAL BACKGROUND

19. Gillard entered into an agreement to serve as Chief Technology Officer for Good Earth Power International Limited ("GEP Int'l") with an annual salary of £150,000 on or about February 3, 2013. Gillard resided in the United Kingdom at the time.

20. Gillard began performing extensive work for GEPAz in May 2014. At that time he still resided in the UK, but began traveling extensively to Arizona to work on GEPAz related tasks.

21. Gillard was formally seconded to serve as Chief Operating Officer for GEPAz in the United States on or around March 2015, and became a part-time resident of Arizona.

22. GEPAz, acting by and through by Rosamond, guaranteed Gillard an annual salary of the British pound equivalent of $250,000 US Dollars and payments of living expenses in Arizona (rent, utilities, internet access, mobile phone).

23. Until his termination, effective December 30, 2016, Gillard had dutifully and satisfactorily performed his duties towards GEPAz, yet he did not receive the full value of the salary he had been promised.

24. Gurner was retained to serve as Managing Director of GEPAz at a guaranteed salary of no less than $240,000 per annum in addition to a signing bonus of $80,000 and other bonuses and incentives.

25. Gurner memorialized this understanding via e-mail exchanges with

BUCHALTER
A PROFESSIONAL CORPORATION
SCOTTSDALE

4

BN 28572730v1

Rosamond, although no physical contract was executed.

26. Gurner continued to perform services for GEPAz until 2016. In September 2016, Gurner's access to GEPAz electronic accounts and resources was suspended then reinstated, without any notification.

27. Gurner's access to GEPAz electronic accounts and resources was discontinued in November 2016, and, subsequently, Gurner was relieved of all day-to-day duties for GEPAz on or about December 15, 2016. Again, without any notification.

28. Gurner last received payment for his services from GEPAz in November 2016, but GEPAz failed to pay him any wages at all in October and December, despite services performed.

29. Gurner notified GEPAz that he considered himself formally constructively discharged from his employment in January 2017.

30. During the course of their respective tenure, neither Gillard nor Gurner received the full value of their respective promised salary.

31. Based upon representations that Rosamond made to Gillard and Gurner about financial difficulties of GEPAz in fulfilling its primary forestry contract (and, therefore, securing much-needed revenues and financing), Gillard and Gurner agreed to continue working for GEPAz despite receiving substantially less than their contractual entitlements. They did so with the express understanding that they ultimately would be paid all they were owed as Defendant GEPAz pursued its contract and its financial situation improved.

32. GEPAz paid them in wages changed with every pay day, ranging from nothing to $12,000 for Gillard and from nothing to $39,613.95 for Gurner.

33. Gillard and Gurner were further frustrated because over the last three (3) years, GEPAz and related entities have received multiple significant infusions of millions of dollars in capital from various investors.

34. Despite their good faith and the apparent influx of new funds, GEPAz did not pay the outstanding balance of the wages owed to Gillard and Gurner throughout the course of their tenures.

35. Having been separated from employment, they are left in an untenable position of having no guarantee or timetable for the repayment of massive unpaid wages.

36. Gillard was entitled to receive £450,000 in salary over three years of services to GEPAz, which is equivalent to $743,291.59 using the going exchange rate at the time of each payment, but was only paid £82,559.574, equivalent to $111,069.00. This resulted in a shortfall of $632,222.59 in unpaid wages to Gillard.

37. Gillard incurred $31,856.62 in business expenses, which were not repaid to him in a timely manner. In December 2016, when Gillard was placed on garden leave (i.e. thirty-day period prior to the formal termination of his employment with GEPAz), Gillard received a lump sum payment of $12,000 to repay some of his outstanding expenses. After his termination and the submission of a demand letter, Gillard received payment of an additional $9,000, in February 2017. To date, Gillard still has not received payment for $10,856.62 in business expenses incurred as far back as May 2014.

38. GEPAz offered Gillard a 0.5% equity share in GEPAz, at least for its Arizona business. GEPAz has made no payment or arrangement for payment, including valuation, for Gillard's equity share in conjunction with his termination, even though it is undeniable that he was entitled to the value thereof as part of his final wages.

39. Gurner was entitled to receive $1,100,000.00 in guaranteed compensation since November 2013 from GEPAz, with additional bonuses and incentives, but received payments of only $195,670.03, leaving an unpaid gap of $804,329.97.

40. Gurner never received any of the incentive payments that GEPAz, acting through Rosamond, promised him at the time he agreed to become GEPAz's Managing Director, including a commission on all biomass sales, a 2.25% equity share in all

BUCHALTER
A PROFESSIONAL CORPORATION
SCOTTSDALE

BN 28572730v1

Arizona business and a 2.25% stake in GEPAz's share of the biofuels component of their forestry contract. Gurner is entitled to an accounting to determine the value of the commissions to which he is entitled but never received, as well as a valuation and payment of these two equity stakes going back to November 2013.

41. GEPAz made no payment of wages after November 2016 to Gurner, despite services provided, and cancelled all of his access to GEPAz data and technology, thereby constructively discharging him effective in or about December 2016.

42. In 2016, the U.S. Department of Labor (Wage and Hour Division) ("DOL") impounded timber harvested by GEPAz because the company had not paid wages owed to certain employees, using the so-called "hot goods" regulatory provisions of the Fair Labor Standards Act.

43. Upon information and belief, as part of its resolution of the hot goods issue with the DOL, GEPAz committed that it would bring itself in full compliance with the FLSA.

44. GEPAz did not conduct an investigation into its wage payment practices, including salary or overtime payment practices towards Plaintiffs and others, nor made any modifications thereto, following the resolution of the hot goods issue with the DOL.

## FIRST CLAIM FOR RELIEF

### Non-compliance with FLSA

45. Plaintiffs hereby reallege and incorporate by reference all allegations in previous paragraphs.

46. GEPAz's conduct towards Gillard and Gurner violated the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §201 *et seq*.

47. Gillard and Gurner were employees as that term is defined in the FLSA.

48. Gillard and Gurner engaged in activities that involved interstate commerce, as they traveled regularly across state lines and in and out of the United States, and

7

BN 28572730v1

BUCHALTER
A PROFESSIONAL CORPORATION
SCOTTSDALE

routinely used electronic, cellular and telephonic means of communications to perform their work duties, often requiring interactions involving various individuals in different states and countries.

49. At all times relevant to this action, GEPAz is and has been an entity involved in interstate commerce and which grossed revenues in excess of $500,000.00 annually.

50. Individual Defendants Rosamond, Minkova and Zawawi personally, and GEPAz and its certain related parent and related entities enumerated herein as Defendants were employers of Gillard and Gurner under the FLSA. *See Boucher v. Shaw*, 572 F.3d 1087, 1091 (9th Cir. 2009).

51. These Defendants had the authority to hire and fire Plaintiffs and other employees, to set the terms of their compensation, to affect their conditions and hours of work, and to maintain employment records pertaining to Plaintiffs and other employees.

52. Under the FLSA, all employees are entitled to receive minimum wage and an overtime wage rate equivalent to one and a half time their regular rate of pay for all time worked in excess of 40 hours in any given workweek. 29 U.S.C. § 207.

53. Plaintiffs were not paid a guaranteed hourly wage rate and overtime, as applicable, for their time worked.

54. Employees that are paid on a pre-determined salary basis of at least $455 per week, which is not subject to increases or decreases, and that perform certain qualifying duties can be treated as exempt from overtime. See 29 C.F.R. §541.118(a).

55. Failure to pay a guaranteed and pre-determined salary, however, renders the exemption from overtime null and void. *Id. See Hurley v. Oregon*, 27 F.3d 392 (9th Cir. 1994).

56. Plaintiffs were not paid a guaranteed pre-determined salary of at least $455 per week without increases or decreases.

BUCHALTER
A PROFESSIONAL CORPORATION
SCOTTSDALE

8

BN 28572730v1

57. Gillard's average regular hourly rate was $120 during the course of his tenure, which spans an estimated 88 work weeks of work performed in the United States over the past three years, and an estimated work week of 70 hours. As a result, Plaintiff Gillard is owed $475,200 in unpaid overtime.

58. For instance, during the week of October 23, 2015, Gillard received only $750 in payment of wages instead of his guaranteed salary while he performed 70 hours of work for GEPAz in the United States, and most specifically in Arizona, usually starting with phone calls from truck operators and sawmill staff starting around 5 a.m. daily.

59. As a further example, for the week of June 6, 2016, Gillard received one payment of $250 for a week in which he spent 70 hours working for GEPAz in lieu of his guaranteed salary. In June 2016, Gillard received additional payments of $750 (June 3, 2016), $220 (June 20) and $240 (June 24). None of those payments represented a fixed guaranteed amount, nor adequate and agreed upon compensation for time worked.

60. Gurner's regular hourly rate was $115, based upon a work week of approximately 70 hours a week. Gurner performed work for GEPAz in the United States for an estimated 44 US work weeks during the last three years. As a result, Gurner is owed $227,700 in unpaid overtime compensation.

61. For instance, during the week of December 14, 2015, Gurner received payment of wages equivalent only to approximately $1250 despite the fact that he performed 70 hours of work for GEPAz for the most part in the United States, and most specifically in Arizona.

62. As a further example, during the week of January 31, 2016 to February 6, 2016, Gurner performed at least 70 hours of work for GEPAz in the United States, and more specifically in Arizona, but received no compensation for those services performed.

63. Under the FLSA, an individual that has not been properly compensated is

BUCHALTER
A PROFESSIONAL CORPORATION
SCOTTSDALE

BN 28572730v1

entitled to liquidated damages (in an amount equal to the unpaid wages), attorney's fees and interests. 29 U.S.C. §216(b).

64. In addition to unpaid overtime, Gurner is also entitled to receive payment of minimum wage for every hour worked in any and all pay periods during which he received no salary payment at all, subject to liquidated damages.

65. Plaintiffs are entitled to liquidated damages and attorney's fees in that Defendants willfully failed to compensate them adequately in compliance with the FLSA. Defendants' non-compliance with the FLSA was inexcusable and in derogation of their legal obligations and representations to the DOL, which should have been evident from a cursory review of the Act.

66. Plaintiffs are entitled to all of the relief provided under the remedial scheme of the FLSA, including back pay for non-payment of minimum wage and overtime, liquidated damages, attorney's fees, costs and interest as a result of Defendants willful violation of the Act.

## **SECOND CLAIM FOR RELIEF**

### **Non-compliance with Arizona Wage Act**

67. Plaintiffs hereby reallege and incorporate by reference all allegations in previous paragraphs.

68. Arizona law provides that wages owed to an individual must be paid within the normal payroll run as they accrue, and generally no less frequently than monthly. Arizona Wage (Payment) Act, A.R.S. § 23-350, *et seq*.

69. When an Arizona employer terminates an employee, the company must pay the employee's final wages in full within seven (7) days or by the next regular pay day immediately following the last day of employment if sooner. *See Id*.

70. Arizona law also provides that an employee, who has not been paid "wages" due to him in a timely manner, may obtain an award of liquidated or treble

BUCHALTER
A PROFESSIONAL CORPORATION
SCOTTSDALE

BN 28572730v1

damages (*i.e.* three times the amount of unpaid wages) for having to bring an action for wages. *See* A.R.S. §23-355; *Sanborn v. Brooker & Wake Prop. Mgmt.*, 874 P.2d 982 (App. 1994).

71. Further, if an improperly paid employee is deemed to be the prevailing party, that party may be entitled to recover his attorney's fees, costs and interest on any unpaid amount. *See Sanborn*, 874 P.2d at 985 (relying upon A.R.S. §12.341.01 to award attorney's fees to the prevailing ex-employee in a wage dispute); *Calisi v. United Fin. Servs., LLC*, 302 P.3d 628 (App. 2013); *see also, Medical Protective Co. v. Pang*, 740 F.3d 1279 (9th Cir. 2013).

72. GEPAz has failed to pay the guaranteed salaries and other emoluments it agreed to pay Plaintiffs for the services they performed.

73. Plaintiffs are entitled not only to recover the totality of unpaid wages during their tenures, but also to recover liquidated damages, thereby tripling the amount of untimely and improperly paid or altogether unpaid wages for each of them.

74. Following application of treble damages, Gillard is owed $1,896,667.77 plus incentives and equity, unreimbursed expenses, interests and attorney's fees.

75. Following application of treble damages, Gurner is owed $2,412,989.91 plus incentives, interests and attorney's fees.

### THIRD CLAIM FOR RELIEF

**(Breach of Contract- As to Plaintiff Gillard)**

76. Plaintiffs hereby reallege and incorporate by reference all allegations in previous paragraphs.

77. In 2013, GEP Ltd, parent of GEPAz, offered Gillard employment at a rate of 150,000 GBP for the performance of duties consistent with the position of Chief Technology Officer.

78. Gillard accepted that offer.

79. Starting on or about February 2014, Gillard became assigned to perform services to GEPAz. GEP Ltd specifically seconded Gillard to GEPAz in 2015.

80. At no time relevant to this lawsuit was Gillard's contract modified to reflect changed compensation.

81. Gillard accepted his assignment to work for GEPAz with the addition of promised reimbursements for his relocation to Arizona and his housing expenses there to supplement his compensation.

82. Gillard satisfactorily performed his duties for GEPAz and remained in its employ continuously until his termination on or about December 30, 2016.

83. Gillard was damaged by Defendants' refusal to perform their obligations under his agreement in an amount to be established at trial.

84. Gillard is entitled to the payment of costs and attorney's fees for having to bring this claim and any and all other and further relief this Court deems appropriate.

## FOURTH CLAIM FOR RELIEF

### (Breach of Implied Contract-As to Plaintiff Gillard)

85. Plaintiffs hereby reallege and incorporate by reference all allegations in previous paragraphs.

86. In 2013, GEP Ltd, parent of GEPAz, offered Gillard employment at a rate of 150,000 GBP for the performance of duties consistent with the position of Chief Technology Officer.

87. Gillard accepted that offer.

88. Gillard was asked starting in 2014 to assist GEPAz and during the inception and growth of that entity, Gillard performed multiple different roles.

89. Gillard performed all tasks presented to him with the assumption that his compensation package remained unchanged regardless of his job duties.

90. In addition to his written agreement, Rosamond agreed that Gillard should

receive a stipend and reimbursement for his relocation to Arizona and living expenses.

91. Gillard satisfactorily performed his duties for GEPAz and remained in its employ continuously until his termination on or about December 30, 2016.

92. Gillard was damaged by Defendants' refusal to perform their obligations under his agreement in an amount to be established at trial.

93. Gillard is entitled to the payment of costs and attorney's fees for having to bring this claim and any and all other and further relief this Court deems appropriate.

## FIFTH CLAIM FOR RELIEF

### (Breach of Covenant of Good Faith and Fair Dealing-- As to Plaintiff Gillard)

94. Plaintiffs hereby reallege and incorporate by reference all allegations in previous paragraphs.

95. GEPAz elected not to pay Gillard the compensation that had been promised to him under his employment agreement.

96. GEPAz elected not to revise Gillard's compensation and offer him a different fixed salary.

97. Instead GEPAz informed Gillard after he had accepted to work for GEPAz that the company would not be able to pay him his full salary but would eventually make him whole.

98. GEPAz, acting by and through Rosamond, promised Gillard that he would be made whole and that he would be paid a stipend to defray his relocation and living costs, but did not fulfill this promise in full, often failing to pay Gillard's stipend and holding off to repay the bulk of his expenses until after he had been let go and threatened litigation.

99. Upon Gillard's termination, GEPAz never provided Gillard an accounting of what he is entitled to receive in incentives and other emoluments promised to him

under his original contract.

100. In refusing to pay Gillard appropriately, Defendants acted in a manner inconsistent with Gillard's reasonable expectations and which adversely affected the benefit of the contract that Gillard legitimately expected to receive at the onset of his relationship with Defendants.

101. Gillard was damaged by Defendants' breach of the implied covenant of good faith and fair dealing in an amount to be established at trial.

102. Gillard is entitled to the payment of costs and attorney's fees for having to bring this claim and any and all other and further relief this Court deems appropriate.

## SIXTH CLAIM FOR RELIEF

### (Breach of Contract-As to Plaintiff Gurner)

103. Plaintiffs hereby reallege and incorporate by reference all allegations in previous paragraphs.

104. In November 2013, GEPAz offered Gurner employment at a rate of no less than $240,000 per annum for the performance of duties consistent with the position of Managing Director of GEPAz, in addition to a yearly signing bonus of $80,000 and other bonuses and incentives.

105. Gurner accepted that offer.

106. At no time relevant to this lawsuit did Gurner or GEPAz nullify the terms of their relationships.

107. Gurner satisfactorily performed his duties for GEPAz and remained in the service of GEPAz until relieved of day-to-day duties by GEPAz.

108. Gurner was damaged by Defendants' refusal to perform their obligations under his agreement in an amount to be established at trial.

109. Gurner is entitled to the payment of costs and attorney's fees for having to bring this claim and any and all other and further relief this Court deems appropriate.

## SEVENTH CLAIM FOR RELIEF

## (Breach of Implied Contract-As to Plaintiff Gurner)

110. Plaintiffs hereby reallege and incorporate by reference all allegations in previous paragraphs.

111. In 2013, GEPAz offered Gurner employment at a rate of no less than $240,000 per annum for the performance of duties consistent with the position of Managing Director of GEPAz, in addition to a yearly signing bonus of $80,000 and other bonuses and incentives.

112. Gurner accepted that offer in lieu of seeking a position in the banking and commodities trading industry.

113. Gurner was asked at the onset of his relationship with GEPAz to perform any tasks that would be required of the company's Managing Director.

114. Gurner performed all tasks presented to him with the assumption that his compensation package remained unchanged and that he would be made whole for any unpaid salary.

115. Although GEPAz was unable to pay Gurner the compensation he had been promised, Rosamond represented to Gurner that he would be made whole for all unpaid wages.

116. Gurner satisfactorily performed his duties for GEPAz until relieved of day-to-day duties by GEPAz in December 2016.

117. Gurner was damaged by Defendants' refusal to perform their obligations under his agreement in an amount to be established at trial.

118. Gurner is entitled to the payment of costs and attorney's fees for having to bring this claim and any and all other and further relief this Court deems appropriate.

BUCHALTER
A PROFESSIONAL CORPORATION
SCOTTSDALE

BN 28572730v1

## EIGHTH CLAIM FOR RELIEF

### (Breach of Covenant of Good Faith and Fair Dealing--
### As to Plaintiff Gurner)

119. Plaintiffs hereby reallege and incorporate by reference all allegations in previous paragraphs.

120. GEPAz elected not to pay Gurner the compensation that had been promised to him as Managing Director of GEPAz.

121. GEPAz elected not to revise Gurner's compensation and offer him a different fixed salary.

122. Instead GEPAz informed Gurner after he had accepted to work for GEPAz that the company would not be able to pay him his full salary but would eventually make him whole.

123. GEPAz, acting by and through Rosamond, promised Gurner that he would be made whole, but did not fulfill this promise in full.

124. GEPAz has never provided Gurner an accounting of what he is entitled to receive in incentives and other emoluments promised to him under his original contract.

125. In refusing to pay Gurner appropriately, Defendants acted in a manner inconsistent with Gurner's reasonable expectations and which adversely affected the benefit of the contract that Gurner legitimately expected to receive at the onset of his relationship with Defendants.

126. Gurner was damaged by Defendants' breach of the implied covenant of good faith and fair dealing in an amount to be established at trial.

127. Gurner is entitled to the payment of costs and attorney's fees for having to bring this claim and any and all other and further relief this Court deems appropriate.

## JURY TRIAL REQUESTED

128. Plaintiffs request a jury trial for all claims triable by jury.

BUCHALTER
A PROFESSIONAL CORPORATION
SCOTTSDALE

BN 28572730v1

## PRAYER FOR RELIEF

Plaintiffs request that an award be entered in its favor against Defendants as follows:

    a. Any and all economic damages to which Plaintiffs are entitled for the non-payment of monies owed them.

    b. All other and further damages, including tortious damages for wrongful denial of the existence of a relationship between Plaintiffs and Defendants.

    c. All punitive and/or exemplary damages, including statutory liquidated damages to be assessed as a result of Defendants' unjustified failure to properly compensate Plaintiffs.

    d. All attorneys' fees Plaintiffs must incur to vindicate their rights in this action.

    e. All interest allowable under law and common law.

    f. All costs and fees incurred and chargeable.

    g. Any other and further relief, including equitable relief, that this Court deems appropriate.

DATED: This 4th day of May, 2017

        BUCHALTER,
        a Professional Corporation

        By: */s/ Laurent R.G. Badoux*
            Laurent R.G. Badoux
            16435 North Scottsdale Road, Suite 440
            Scottsdale, AZ 85254-1754
            Telephone: (480) 383-1800
            Fax: (480) 824-9400
            *Attorneys for Plaintiffs*

BUCHALTER
A PROFESSIONAL CORPORATION
SCOTTSDALE

17

BN 28572730v1