Robert A. Shull (AZ 003467)
rshull@dickinsonwright.com
Amanda E. Newman (AZ 032462)
anewman@dickinsonwright.com
**DICKINSON WRIGHT PLLC**
1850 North Central Avenue, Suite 1400
Phoenix, Arizona 85004
Telephone: (602) 285-5000
Facsimile: (602) 285-5100
Firm e-mail address:  courtdocs@dickinsonwright.com

*Attorneys for Defendants Good Earth Power AZ, LLC, ZR FEC Ltd., FEC Logging USA Holdings, LLC, Jason Rosamond, and Maya Minkova*

Joshua T. Greer (AZ 025508)
jgreer@law-msh.com
**MOYES SELLERS & HENDRICKS LTD.**
1850 North Central Avenue, Suite 1100
Phoenix, Arizona 85004
Telephone: (602) 604-2141
Facsimile: (602) 274-9135

*Attorneys for Defendant Good Earth Power AZ, LLC and FEC Logging USA Holdings, LLC*

# UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| Martin Gillard; Darren Gurner, <br><br>Plaintiffs, <br><br>v. <br><br>Good Earth Power AZ, LLC, an Arizona limited liability company; ZR FEC Ltd., a BVI company; Jason Rosamond and Maya Minkova, husband and wife; Alawi Zawawi; Good Earth Power Ltd., a British Virgin Islands company; FEC Logging USA Holdings, LLC, a Delaware limited liability company, <br><br>Defendants. | No. 2:17-cv-01368-DLR <br><br>**DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT RE: FEDERAL LABOR STANDARDS ACT** <br><br>**(Oral Argument Requested)** |

///

Defendants Good Earth Power AZ, LLC ("GEPAZ"), ZR FEC Ltd. ("ZR FEC"), Jason Rosamond ("Rosamond"), Maya Minkova ("Minkova"), and FEC Logging USA Holdings, LLC ("FEC Logging") (collectively, "Defendants") move pursuant to Federal Rule of Procedure 56 for partial summary judgment dismissing in its entirety the First Claim for Relief, for alleged violations of the Fair Labor Standards Act (the "FLSA").

This Motion is supported by the following Memorandum of Points and Authorities, the concurrently filed Defendants' Statement of Facts in Support of Motions for Partial Summary Judgment ("SOF"), and the record in this case.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

The broad-based FLSA claim Plaintiffs Martin Gillard ("Gillard") and Darren Gurner ("Gurner") (collectively, "Plaintiffs") assert against Defendants is deficient in numerous ways, some of which demand complete dismissal of the claim while others require dismissal of discrete portions. Defendants are entitled to judgment as a matter of law as follows:

(a) determining that Gurner was an independent contractor and not subject to the FLSA, and dismissing Gurner's FLSA claim in its entirety;

(b) determining that Gillard (and, to any extent he was an employee, Gurner) was an exempt executive under the FLSA, and dismissing Plaintiffs' FLSA claim in its entirety;

(c) determining that ZR FEC, GEPAZ, Minkova, and FEC Logging were not "joint employers" of Plaintiffs under the FLSA, and dismissing the FLSA claim as to them;

(d) determining that Plaintiffs may only make claims for work in the U.S. (*at most* 36 workweeks for Gurner and 77 for Gillard), and limiting their FLSA claim to those periods; and

(e) determining that the two-year statute of limitations applies and dismissing the portions of the FLSA claim before April 6, 2015 as to GEPAZ and before May 4, 2015 as to the other Defendants, limiting the claims, *at most*, to: 15 workweeks for Gurner, 65 workweeks for Gillard as to claims against GEPAZ, and 62 workweeks for Gillard as to claims against the others.

## II.   MATERIAL FACTS

GEPAZ has a contract with the United States Forest Service to thin 300,000 acres of forest in Northern Arizona, a project known as the Four Forest Restoration Initiative ("4-FRI"). That project involves logging, milling, trucking, biomass, soils, and chip sale components. ZR FEC is a related entity that oversaw enterprises in Arizona connected to 4-FRI and GEPAZ's operations. [SOF ¶ 1].

Rosamond is Chief Executive Officer of ZR FEC, GEPAZ, and former defendant Good Earth Power Ltd ("GEP Ltd"), a British Virgin Islands company with headquarters in Oman that works predominantly in Africa.[1] [SOF ¶ 4]. Minkova, Rosamond's wife, is a vice president of GEP Ltd. [SOF ¶ 5].

FEC Logging became the sole member of GEPAZ via an amendment to GEPAZ's articles of organization dated March 15, 2017. FEC Logging has not contractually assumed any obligations of GEPAZ's former members. [SOF ¶ 2].

### A.   Martin Gillard

In 2013, GEP Ltd hired Gillard to work on its African projects. [SOF ¶ 8]. In 2014, GEP Ltd's primary African project was delayed, and its business consequently wound down. [SOF ¶ 9]. GEP Ltd gave Gillard the option of leaving its employ or remaining a GEP Ltd employee but assuming a role in Arizona as a consultant for ZR FEC. ZR FEC needed to outsource a role in establishing a soils business in Arizona. [SOF ¶ 10].

In August 2014, Gillard assumed a consulting role for ZR FEC on behalf of GEP Ltd. [SOF ¶ 10]. Gillard remained employed by GEP Ltd under his existing contract. [SOF ¶ 11].

In December 2014, Gillard notified GEP Ltd that the soils consulting job was not substantial enough. GEP Ltd secured for him an interim consulting placement as chief operations officer of Seymour Forest Products LLC (another related entity). After a few months, GEP Ltd removed Gillard from that role and had him work on specifically assigned

---

[1] GEP Ltd and defendant Alawi Zawawi were dismissed on January 9, 2018. [Doc. 56].

2

side projects before assigning him a consulting role managing a new entity owned by ZR FEC, Good Earth Trucking LLC ("Good Earth Trucking"). [SOF ¶ 14].

Gillard began working in Arizona on the understanding that it was an interim placement. On or around March 25, 2015, Gillard moved from the U.K. to Arizona to make the placement more permanent. [SOF ¶ 15]. Even during the periods he lived in Arizona, however, Gillard was frequently in the U.K., sometimes for extended periods. [SOF ¶ 17].

In the fall of 2016, ZR FEC decided to shut down Good Earth Trucking. GEP Ltd informed Gillard that, because his role was no longer available, he could either return to his original role of managing ZR FEC's soils business or return to Africa to restart operations there. Gillard declined both positions and left GEP Ltd's employ. [SOF ¶ 18].

Gillard was never contractually employed by GEPAZ or ZR FEC. Rather, he was employed by GEP Ltd. Services Gillard provided related to 4-FRI were pursuant to his contract with GEP Ltd. [SOF ¶¶ 19-20]. While working in Arizona, Gillard agreed that a portion of his wages from GEP Ltd would be deferred and "put on account" rather than paid out. [SOF ¶ 11].

**B.     Darren Gurner**

In late 2013, GEP Ltd gave Gurner's company, Marlin Wood Ltd ("Marlin Wood"), a proposal to market biomass, wood chips, and other forest residue for entities including ZR FEC, as a nonexclusive "consultant" working as an independent contractor. [SOF ¶ 22]. Shortly thereafter, GEP Ltd engaged Marlin Wood, as an independent contractor, and Marlin Wood deployed Gurner as interim managing director of ZR FEC. [SOF ¶ 25].

GEP Ltd sought services from Gurner, through Marlin Wood, largely due to his special skills and connections — specifically, his knowledge about and contacts in the forestry, biomass, pulp and paper, and lending markets. [SOF ¶ 27]. Gurner considers himself an expert in the pulp and paper and commodities markets and the forestry products industry. [SOF ¶ 28].

GEP Ltd and Gurner discussed making Marlin Wood the permanent managing director of ZR FEC, and exchanged emails on the subject, but could never reach an agreement. [SOF ¶ 29].

1  Because Gurner ultimately never moved to Arizona to assume the full position, GEP Ltd
2  continued to retain Marlin Wood as an independent contractor to provide interim management
3  services to ZR FEC and, later, to provide periodic, specific-project-based consulting services to
4  ZR FEC. [SOF ¶¶ 30-34]. Marlin Wood agreed to receive weekly payments of $1,250 when
5  services were rendered and to defer the balance of its compensation. [SOF ¶ 37].

6        Gurner was never employed by GEPAZ or ZR FEC. He was deployed to perform work
7  for ZR FEC through Marlin Wood's retention as an independent contractor for GEP Ltd. [SOF
8  ¶ 42]. Invoices for Gurner's work, referencing "consulting," were regularly sent by Marlin
9  Wood to GEP Ltd. [SOF ¶ 40]. Gurner's work patterns were unstructured, and he controlled
10  the manner in which he worked. He made his own hours; was located in the U.K., working
11  primarily out of his home; and provided services (often specific project-based) intermittently.
12  [SOF ¶ 45].

13        Gurner/Marlin Wood's provision of consulting services to GEP Ltd was nonexclusive.
14  From approximately late 2014 through late 2016, Gurner, through Marlin Wood, also provided
15  consulting services to Skandinaviska Enskilda Banken AB ("SEB"). [SOF ¶ 43]. SEB
16  compensated Marlin Wood approximately £ 150,000 per year. [SOF ¶ 44].

17        **C.**     **Plaintiffs' Work Circumstances**

18        For both Gurner and Gillard, GEP Ltd had hiring and firing power, supervised their
19  conditions of payment, determined the rate and method of payment, and maintained
20  employment records. [SOF ¶ 50]. ZF FEC had the power to terminate Plaintiffs' placements
21  with ZR FEC but not their agreements with GEP Ltd. [SOF ¶ 51]. ZR FEC's premises were
22  used for only some of Gillard's work. [SOF ¶ 52]. The vast majority of Gurner's work was
23  performed in the United Kingdom, not on any of Defendants' premises. [SOF ¶ 53].

24        Gillard's position was only semi-permanent, and GEP Ltd secured each placement.
25  [SOF ¶ 57]. When Good Earth Trucking closed, GEP Ltd offered Gillard a choice of
26  alternative positions, including one outside of the Arizona operations. [SOF ¶ 18].

1      GEPAZ, Minkova, and FEC Logging did not have hiring/firing power, supervise and
2 control work schedules/ payments, determine payments, or maintain employment records for
3 Plaintiffs. They did not supervise or control Plaintiffs and had no involvement in their
4 employment relationships. [SOF ¶¶ 58-61]. FEC Logging was not even formed until shortly
5 before Plaintiffs contend their employment ended and did not become the member of GEPAZ
6 until after their departure. [SOF ¶¶ 2, 21, 46].

7      Gillard was a salaried employee who worked primarily in management, directed other
8 employees' work, and had a say in other employees' employment status. [SOF ¶¶ 62, 64].
9 When Gurner worked as interim managing director, he was in a management role with
10 oversight of the business and several subordinates and was involved in decision-making for
11 employees' compensation. [SOF ¶ 63]. Gurner maintains he was a salaried employee. [SOF
12 ¶ 65].

13      Gillard's salary/amounts earned were never reduced due to variations in the quality or
14 quantity of the work performed. [SOF ¶ 64]. During the time Marlin Wood (through Gurner)
15 performed services to GEP Ltd full-time, its salary/amounts earned were never reduced due to
16 variations in the quality or quantity of the work performed. [SOF ¶ 66]. Although there were
17 fluctuations in the amounts *paid* to Gillard and Marlin Wood, *salary rates owed* did not
18 fluctuate. [SOF ¶ 67]. Rather, the unpaid salary portions accrued. [SOF ¶¶ 11, 12, 37, 38].

19      Gillard performed services related to 4-FRI <u>while in the U.S.</u> during, <u>at most</u>, 77
20 workweeks. [SOF ¶¶ 54, 56]. Gurner performed services related to 4-FRI <u>while in the U.S.</u>
21 during, <u>at most</u>, 36 workweeks. [SOF ¶¶ 55-56].

22      **D.    Other Events**

23      In 2015 through mid-2016, the Department of Labor (the "DOL") investigated certain
24 Defendants and others related to 4-FRI operations and alleged wage-and-hour violations
25 related to hourly employees retained by third-party organizations involved in 4-FRI. [SOF
26 ¶ 68]. The DOL looked at all individuals involved in performance of the 4-FRI contract and

1 did not raise any issues related to salaried individuals and, specifically, Plaintiffs. [SOF ¶ 69].

2 Gillard handled interactions with the DOL and was responsible for ensuring Defendants' compliance with all labor laws. He never raised to Defendants any potential noncompliance involving payments to him and/or Gurner. [SOF ¶ 70].

Defendants attempted to comply with all labor laws applicable to their businesses. [SOF ¶ 71]. Plaintiffs have identified no evidence that Defendants acted in bad faith or willfully violated the FLSA with respect to Plaintiffs, other than pointing to the previous DOL issues, which were unrelated to Plaintiffs or any other salaried employees. [SOF ¶¶ 72, 69].

Plaintiffs and GEPAZ executed a tolling agreement effective for a period of 28 days in early 2017. The other Defendants were not parties to that agreement. [SOF ¶ 75].

### III. LEGAL ANALYSIS

Defendants are entitled to judgment as a matter of law determining that: Gurner was an independent contractor not covered by the FLSA; Plaintiffs were executives exempt from FLSA wage and hour protections; ZR FEC, GEPAZ, Minkova, and FEC Logging were not joint employers of Plaintiffs for FLSA purposes; Plaintiffs' claims are limited to workweeks they spent in the U.S.; and the two-year statute of limitations applies and bars portions of the FLSA claim.

### A. Gurner was an independent contractor and not subject to the FLSA.

Only employees, not independent contractors, are covered by the FLSA. In distinguishing between the two, "employees are those who *as a matter of economic reality* are dependent upon the business to which they render service." *Real v. Driscoll Strawberry Associates, Inc.*, 603 F.2d 748, 754 (9th Cir. 1979) (quoting *Bartels v. Birmingham*, 332 U.S. 126, 130, 67 S. Ct. 1547, 1550 (1947)). The Ninth Circuit has outlined several factors that may be considered, including:

> 1) the degree of the alleged employer's right to control the manner in which the work is to be performed;
> 2) the alleged employee's opportunity for profit or loss depending upon his managerial skill;
> 3) the alleged employee's investment in equipment or materials required for his task, or his employment of helpers;
> 4) whether the service rendered requires a special skill;

6

>   5) the degree of permanence of the working relationship; and
>
>   6) whether the service rendered is an integral part of the alleged employer's business.

*Id.* "The presence of any individual factor is not dispositive . . . . [The] determination depends upon the circumstances of the whole activity." *Id.* (internal quotation marks omitted).

Under *Real*, Gurner must be considered an independent contractor. He certainly was not economically dependent on his 4-FRI consulting work — during most of the same period, he was earning *approximately £ 150,000 per year* (the equivalent of about $200,000 to $225,000 per year) consulting for SEB. The totality of the circumstances confirms this result. Gurner's work patterns were unstructured, and he controlled the manner in which he performed his work. He made his own hours, worked offsite (outside the United States), and provided services (often specific project-based) intermittently. Particularly in 2015 and 2016, the services he rendered were not integral to any of the businesses. He was retained for his special skills — i.e., his knowledge of and contacts in the biomass, timber, and related markets.

Because Gurner's circumstances confirm that he was an independent contractor rather than an employee, he was not covered by the FLSA and his claims under it must be dismissed.

### B.  Plaintiffs were exempt from the FLSA wage and hour provisions.

"[A]ny employee employed in a bona fide executive . . . capacity" is exempt from FLSA §§ 206 and 207 wage and hour provisions. 29 U.S.C.A. § 213(a)(1). An individual is employed as an executive if he is "[c]ompensated on a salary basis at a rate of not less than $455 per week," works primarily in management, directs other employees' work, and has a say in their employment status. 29 C.F.R. § 541.100. Gillard, who worked as chief operations officer of ZR FEC and then manager of Good Earth Trucking, directed other employees and had a say in their employment status, and earned a salary of $17,500 per month, qualified for this exemption.[2]

The FAC inaccurately contends that Plaintiffs lost their exempt status because they were not paid at least $455 per week without increases or decreases. An employee meets the "salary

---

[2] If Gurner were found to be an employee rather than an independent contractor, he would also be exempt, as his work was initially as an interim managing director with compensation of £ 12,500 per month, and he directed other employees and had a say in their employment status.

basis" requirement of the exemption if he receives, "on a weekly or less frequent basis," a salary "not subject to reduction *because of variations in the quality or quantity of the work performed.*" 29 C.F.R. § 541.602(a) (emphasis added). As Gurner admitted in deposition testimony, any reductions in the amounts *paid* to Plaintiffs were caused not by "variations in the quality or quantity of the work performed" but rather by their agreement to defer portions of the wages; Plaintiffs' salary *amounts* were never reduced. As Plaintiffs were exempt executives under 29 U.S.C.A. § 213(a)(1), their FLSA wage and hour claims must be dismissed.

### C. ZR FEC, GEPAZ, FEC Logging, and Minkova were not "joint employers."

Gillard was contractually employed by GEP Ltd, not by Defendants.[3] To any extent Plaintiffs are found to be subject to the FLSA and Defendants are held liable, ZR FEC, GEPAZ, FEC Logging, and Minkova cannot be held liable as "joint employers."

In determining whether there is a joint employer, the Ninth Circuit applies an "economic reality" test that considers the "total employment situation" by focusing on four primary factors: "whether the alleged employer (1) had the power to hire and fire employees, (2) supervised and controlled employee work schedules or conditions of payment, (3) determined the rate and method of payment, and (4) maintained employment records." *Moreau v. Air France*, 356 F.3d 942, 947 (9th Cir. 2004) (quoting *Bonnette v. California Health and Welfare Agency*, 704 F.2d 1465 (9th Cir. 1983)). Courts may also consider whether: (1) the alleged employer's premises were used for the work; (2) the work required initiative, judgment, or foresight; (3) the employee had opportunities to advance/profit based on his managerial skill; (4) the working relationship was permanent; and (5) the services were integral to the alleged employer's business. *Id.* at 947-48 (quoting *Torres-Lopez v. May*, 111 F.3d 633, 639 (9th Cir. 1997)).[4]

ZR FEC was not a joint employer under the economic reality test: (1) hiring/firing power rested with GEP Ltd, and ZR FEC only had the power to terminate a specific assignment with ZR

---

[3] Gurner was also retained by GEP Ltd. To any extent he is determined to be an employee rather than an independent contractor, this analysis applies to him as it does to Gillard.

[4] *Torres-Lopez* identified additional factors, but several are less applicable depending on the particular employment relationship and are not implicated here. *See id.* at 952; *Jimenez v. Servicios Agricolas Mex, Inc.*, 742 F. Supp. 2d 1078, 1089 (D. Ariz. 2010).

8

FEC; (2) ZR FEC supervised work schedules but not conditions of payment (that was GEP Ltd); (3) GEP Ltd determined payment rates/methods; and (4) GEP Ltd maintained employment records. The applicable *Torres-Lopez* factors confirm this. ZR FEC's premises in Arizona were used for only portions of the work. Gillard's position was only semi-permanent: He made several position changes, all controlled by GEP Ltd, which secured each placement. When Good Earth Trucking closed, *GEP Ltd* offered him a choice of alternative positions. Gillard's opportunities for profit and advancement were within GEP Ltd, which controlled his job placements and compensation. The economic reality was that Gillard was employed by and dependent on GEP Ltd, and ZR FEC's shared oversight was too limited to rise to the level of a joint employer.

Nor was GEPAZ a joint employer. It did not have hiring/firing power, control work schedules/payments, determine payments, or maintain employment records. Plaintiffs' work was controlled by GEP Ltd and, to a much lesser extent, ZR FEC, not by GEPAZ. FEC Logging and Minkova certainly were not joint employers. They did not supervise or control Plaintiffs and had no involvement in their employment. FEC Logging did not exist during most or all of the relevant times and did not contractually assume any obligations of GEPAZ's former members.

Under these circumstances, ZR FEC, GEPAZ, Minkova, and FEC Logging cannot be held liable as joint employers of Plaintiffs. The FLSA claim must be dismissed as to them.

**D.      Plaintiffs cannot assert the FLSA for services performed outside the U.S.**

The wage and hours protections of the FLSA do not apply "with respect to any employee whose services during the workweek are performed in a workplace within a foreign country . . . ." 29 U.S.C.A. § 213(f). *At most* Gurner spent portions of 36 workweeks in the U.S. and Gillard spent portions of 77 workweeks. Their FLSA claims must be limited to those periods.

**E.      The statute of limitations bars portions of Plaintiffs' claims.**

Claims under the FLSA must be commenced within two years after they accrue. 29 U.S.C.A. § 255(a). That limitation is extended to three years only for "willful violations." *Id.* In determining whether a violation was willful, "[m]ere negligence by the employer in determining its legal obligation is not sufficient; there must be evidence that the employer affirmatively knew

9

it was violating the FLSA or that it was acting with 'reckless disregard' of the FLSA." *Nelson v. Waste Mgmt. of Alameda County, Inc.*, 33 Fed. Appx. 273, 274 (9th Cir. 2002); *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 135 n.13, 108 S. Ct. 1677, 1682 n.13 (1988).

Plaintiffs cannot show that any Defendant willfully violated the FLSA. Asked to identify all such evidence, Plaintiffs pointed only to the prior DOL issues related to 4-FRI. However, those issues, which were resolved by mid-2016, involved hourly (rather than salaried) employees and involved third-party organizations (such as a logging company separate from Defendants). The DOL looked at all individuals involved in GEPAZ's performance of the 4-FRI contract and did not raise any issues related to salaried individuals or, specifically, Plaintiffs. In fact, Gillard handled interactions with the DOL and was responsible for ensuring Defendants' compliance with all labor laws; he never raised to Defendants any potential noncompliance involving payments to him or Gurner. The past DOL issues do not provide a basis for finding Defendants "willfully" violated the FLSA as to Plaintiffs, so the two-year statute of limitations applies.

As Plaintiffs filed this action on May 4, 2017, they are barred from asserting claims against GEPAZ (due to the tolling agreement) for periods preceding April 6, 2015 and against the other Defendants for periods preceding May 4, 2015. Based on the times Plaintiffs were in the U.S., this limits their claims, *at most*, to 15 workweeks for Gurner and 65 for Gillard (62 as to the non-GEPAZ Defendants). All claims beyond those limited dates should be dismissed.

## IV. CONCLUSION

For the foregoing reasons, the Court should dismiss the FLSA claim in its entirety or, at the very least, dismiss Gurner's claim, dismiss the claim as to ZR FEC, GEPAZ, Minkova, and FEC Logging, and limit the claim to the periods Plaintiffs spent in the U.S. within the two-year statute of limitations.

RESPECTFULLY SUBMITTED this 30th day of May, 2018.

**DICKINSON WRIGHT PLLC**

By: *s/ Robert A. Shull*
   Robert A. Shull
   Amanda E. Newman
   *Attorneys for Defendants Good Earth Power AZ, LLC, ZR FEC Ltd., FEC Logging USA Holdings, LLC, Jason Rosamond, and Maya Minkova*

**MOYES SELLERS & HENDRICKS LTD.**

By: *s/ Joshua T. Greer*
   Joshua T. Greer
   *Attorneys for Defendant Good Earth Power AZ, LLC and FEC Logging USA Holdings, LLC*

11

**CERTIFICATE OF SERVICE**

I hereby certify that on May 30, 2018, I electronically transmitted the attached document to the Clerk of the Court using the CM/ECF system. The attached document will be sent electronically to all registered participants as identified on the Notice of Electronic Filing, and paper copies will be sent to those indicated as non-registered participants.

By: *s/ Nicole Francini*

PHOENIX 73923-1 465408v1