**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Martin Gillard, et al., | No. CV-17-01368-PHX-DLR |
| Plaintiffs, | **ORDER** |
| v. | |
| FEC Logging USA LLC, | |
| Defendant. | |

Before the Court is a motion to dismiss filed on behalf of Defendant FEC Logging USA Holdings, LLC ("FEC Logging").[1] (Doc. 39.) The motion is fully briefed and neither party requested oral argument. (Docs. 46, 49.) For the following reasons, FEC Logging's motion is granted in part.

**I. Background**

On May 4, 2017, Plaintiffs filed a complaint in this action, raising Fair Labor Standards Act (FLSA), Arizona Wage Act (AWA), and common law breach of contract claims. (Doc. 1) On July 20, 2017, Plaintiffs filed their First Amended Complaint ("FAC"), which made the same allegations, but modified the named defendants. Notably, the FAC added FEC Logging as a defendant. (Doc. 20 ¶ 13.)

---

[1] Plaintiffs also name Good Earth Power AZ, LLC ("GEPAZ"), ZR FEC Ltd. ("ZR FEC"), Good Earth Power Ltd. ("GEP"), Jason Rosamond, Maya Minokva, and Alawi Zawawi as defendants in this matter. (Doc. 20.) No other defendant has joined in FEC Logging's motion.

As a general matter, the allegations in the FAC arise out of an employment dispute. In February 2013, Plaintiff Martin Gillard entered into an agreement to serve as Chief Technology Officer for Good Earth Power International Limited ("GEP Int'l"). (Doc. 20 ¶ 16.) At some point thereafter, Gillard's contract with GEP Int'l was assumed by GEPAZ. (¶ 19.) In November 2013, Plaintiff Darren Gurner was retained to serve as Managing Director of GEPAZ. (¶ 22.) Gillard and Gurner ("Plaintiffs") both worked for GEPAZ until they were terminated in December 2016. (¶¶ 21, 27.) During their period of employment, Plaintiffs neither received the full value of their respective salaries nor compensation for their equity stake in GEPAZ. (¶¶ 30, 38, 40.)

As a result, Plaintiffs brought suit against GEPAZ. Plaintiffs sought to extend GEPAZ's liability to FEC Logging under the theory of successor liability. Under Plaintiff's theory, because FEC Logging replaced ZR FEC as the lone Member of GEPAZ in March 2017, it thereby assumed any liabilities of its predecessor in interest.[2] (Doc. 20 ¶ 13.)

FEC Logging has moved pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss the amended complaint for failure to state a claim upon which relief may be granted.

**II. Legal Standard**

When analyzing a complaint for failure to state a claim to relief under Rule 12(b)(6), the well-pled factual allegations are taken as true and construed in the light most favorable to the nonmoving party. *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009). Legal conclusions couched as factual allegations are not entitled to the assumption of truth, *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009), and therefore are insufficient to defeat a motion to dismiss for failure to state a claim, *In re Cutera Sec. Litig.*, 610 F.3d 1103, 1108 (9th Cir. 2010). Nor is the court required to accept as true

---

[2] Although not included in its complaint, Plaintiffs' response memorandum to FEC Logging's Motion to Dismiss states "it is without dispute that FEC Logging has replaced Defendant ZR FEC as the lone member of GEPAZ." (Doc. 46 at 3.) The Court reads this statement to mean that ZR FEC is the only predecessor in interest to FEC Logging.

"allegations that contradict matters properly subject to judicial notice," or that merely are "unwarranted deductions of fact, or unreasonable inferences*.*" *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

To avoid dismissal, the complaint must plead sufficient facts to state a claim for relief that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This plausibility standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557.)

**III. Discussion**

FEC Logging's argument as to why Plaintiff's FLSA claim fails is twofold. First, it contends that the FAC alleges no factual or statutory basis for concluding that FEC Logging is a successor in interest of any of GEPAZ's prior members. Second, even if successor liability could be inferred, the FAC also fails to allege a basis for holding the predecessor members of GEPAZ liable. Similarly, FEC Logging contends that the AWA and common law claims fail because there are insufficient allegations to find FEC Logging is a successor in interest.

    **A. FLSA Claim**

        **i. Successor Liability**

Under the general successor liability rule, "when a corporation sells or transfers its principal assets to a successor corporation, the latter will not be liable for the debts and liabilities of the former." *Winsor v. Glasswerks PHX, LLC*, 63 P.3d 1040, 1045 (Ariz. Ct. App. 2003) (citing *A.R. Teeters & Assocs., Inc. v. Eastman Kodak Co.*, 836 P.2d 1034, 1039 (Ariz. Ct. App. 1992)). There are, however, four exceptions to this rule: (1) the successor expressly or impliedly agrees to assume liabilities; (2) the transaction is a de facto consolidation or merger; (3) the successor is a mere continuation of the seller; or (4) the transfer of assets was entered for the purpose of fraudulently escaping liability. *Id.*

Notably, courts apply different rules for determining successor liability when a federal employment statute is involved.

The Court in *Steinbach* noted,

> Successorship liability was originally adopted under the NLRA to avoid labor unrest and provide some protection for employees against the effects of a sudden change in the employment relationship. In deciding to extend successorship liability to other contexts, courts have recognized that extending liability to successors will sometimes be necessary in order to vindicate important statutory policies favoring employee protection. Where employee protections are concerned, judicial importation of the concept of successor liability is essential to avoid undercutting Congressional purpose by parsimony in provision of effective remedies.

*Steinbach v. Hubbard*, 51 F.3d 843, 846 (9th Cir. 1995) (quotation marks and citations omitted). Under the modified successorship rule for federal employment statutes, courts look at three factors: (1) whether "the subsequent employer was a bona fide successor;" (2) whether "the subsequent employer had notice of potential liability;" and (3) "the extent to which the predecessor is able to provide adequate relief directly." *Id.* at 846.

Plaintiffs' allegation specific to FEC Logging states in its entirety:

> [FEC Logging] is a Delaware limited liability company. As of March 31, 2017, FEC Logging is the sole Member of GEPA[Z], and, upon information and belief, is successor in interest to any and all previous members of GEPA[Z].

(Doc. 20 ¶ 13.) Plaintiffs' allegation is a legal conclusion. The FAC offers no other allegations concerning the three factors used to determine successor liability in the FLSA context. Therefore, in accordance with the standards set out in *Twombly* and *Iqbal*, the Court finds that the FAC fails to state a claim against FEC Logging.

### ii. Predecessor Liability

Even assuming Plaintiffs had properly alleged successor liability, the FAC also fails to sufficiently allege a basis for predecessor liability. That is, in order for a successor to have liability, it must be shown not only that it is a successor in interest, but that its predecessor in interest has liability. Although the FAC alleges that FEC Logging

1  is "successor in interest to *any* and *all* previous members of GEPA[Z]," ZR FEC is the
2  only member of GEPAZ specifically named in the FAC.  (Doc. 20 ¶¶ 5, 9.)  Notably,
3  Plaintiffs state in their response memorandum that "it is without dispute that *FEC*
4  *Logging has replaced Defendant ZR FEC as the lone member of GEPAZ*."  (Doc. 46 at 3
5  (emphasis added).)³ Therefore, Plaintiff must show that ZR FEC, as a prior member of
6  GEPAZ would have been liable for the misdeeds alleged.

7  Under Arizona law, members of an LLC are not liable for the obligations and
8  liabilities of the LLC solely by reason of being a member.  A.R.S. § 29-651.  If, however,
9  the members of an LLC are using the LLC as an "alter ego," then the limited liability veil
10 can be pierced and the members can be liable for the obligations and liabilities of the
11 LLC.  9 Ariz. Prac., Business Law Deskbook § 3:9 (2017-2018 ed.) (citing *Standage v.*
12 *Standage*, 711 P.2d 612, 615 (Ariz. Ct. App. 1985); *Dietel v. Day*, 492 P.2d 455 (Ariz.
13 Ct. App. 1972)).  In order to pierce the limited liability veil, a plaintiff must demonstrate
14 that the corporation is (1) the alter ego of the individual against whom recovery is sought
15 and that (2) recognition of the corporate form would sanction a fraud or promote
16 injustice.  *See e.g.*, *Employer's Liab. Assurance Corp. v. Lunt*, 313 P.2d 393, 395 (Ariz.
17 1957).  The Court discusses each prong in turn.

### a. Alter-Ego

19 "In Arizona, the alter-ego status is said to exist when there is such unity of interest
20 and ownership that the separate personalities of the corporation and owners cease to
21 exist."  *In re Keesling*, No. CV 12-01053-PHX-JAT, 2012 WL 5868883, at *3 (D. Ariz.
22 Nov. 19, 2012) (quotation marks and citation omitted). "Alter ego status can be shown
23 by: (1) under-capitalization; (2) failure to maintain a separate corporate identity; (3)
24 diversion of corporate property for personal use; (4) lack of corporate formalities; and (5)

---

26  ³ The Court questions whether this statement is, in fact, "without dispute" given
27 that the FAC also states that "ZR FEC maintains a 70% ownership share of GEPA[Z]" and "describes ZR FEC as "majority member of GEPA[Z]."  (Doc. 20 ¶¶ 5, 9 (emphasis
28 added).)  Nevertheless, because the FAC makes no mention of other prior members of GEPAZ, nor alleges a basis for these unnamed entities' liability, the Court limits its analysis of predecessor liability to ZR FEC.

failure to maintain books and records of account in reasonable order." *Id.* (quotation marks and citation omitted).

Generally, the adequacy of capital is measured as of the time of formation of the corporation. That is to say that a "corporation that was adequately capitalized when formed but which subsequently suffers financial reverses is not undercapitalized." *Norris Chem. Co. v. Ingram*, 679 P.2d 567, 570 (Ariz. Ct. App. 1984) (quotation marks and citation omitted). Here, there is no allegation that GEPAZ was undercapitalized at its inception. (Doc. 20 ¶¶ 30-31.)

Determining whether there is a separate corporate identity and whether corporate formalities are maintained are fact intensive analyses. Plaintiffs allege that Defendants Rosamond and Zawari "each owned a 50% interest in JARZ Holdings International Ltd.," which in turn owned "100% of JARZ Technologies Ltd.," which in turn "owned 100% of ZR Telecoms," which in turn "owned 100% of ZR FEC." (¶ 6.) Neither ownership of all the stock of a subsidiary, identity of officers and directors, or a combination of the two is sufficient to justify piercing the corporate veil. *See e.g.*, *Horizon Res. Bethany Ltd. v. Cutco Indus., Inc.*, 881 P.2d 1177, 1181 (Ariz. Ct. App. 1994). Rather, such factors are common business practice and exist in most parent and subsidiary relationships. Absent a pleading with more specific factual allegations, the FAC fails to state a plausible cause of action against FEC Logging. *Iqbal*, 556 U.S. at 678.

Instead, to determine whether corporate formalities are maintained, courts look to factors such as whether the physical locations of the corporations are different; whether the records of each entity are separately maintained; where there is commingling of funds; whether payrolls are separately administered; and whether contracts are independently negotiated and signed. Here, the FAC simply does not include factual allegations regarding the lack of corporate formalities between GEPAZ and its member ZR FEC.[4] Nor does the FAC make any allegations concerning the diversion of GEPAZ

---

[4] The Court notes that while the FAC alleges that GEPAZ conducted business through a host of related entities, "all of which contributed revenues to GEPA[Z] and/or provided compensation to Plaintiffs for performance of service," missing from that list is

property for personal use by ZR FEC.

### b. Fraud or Injustice

"Fraud may be found where incorporation is for fraudulent purposes or where, after organization, the corporation is employed for fraudulent purposes." *In re Keesling*, 2012 WL 5868883, at *4. A showing of alter-ego alone does not constitute a fraud or injustice, rather "it is incumbent . . . to show by a preponderance of the evidence that the financial setup of the corporation is only a sham and causes injustice." *Ize Nantan Bagowa, Ltd. v. Scalia*, 577 P.2d 725, 729 (Ariz. Ct. App. 1978). Here, the FAC offers no allegation that FEC Logging was created to perpetuate a fraud or an injustice.

### iii. Status as Employer

To the extent Plaintiffs claim that FEC Logging can be held liable under the FLSA as an employer, their claims fail. (Doc. 46 at 2.) The FLSA defines "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee . . . ." 29 U.S.C. § 203(d). In determining whether a party may be held liable under the FLSA as an employer, courts apply an "economic reality" test that considers the "total employment situation" while focusing on four factors: whether the alleged employer (1) had the power to hire and fire employees, (2) supervised and controlled employee work schedules or conditions of payment, (3) determined the rate and method of payment, and (4) maintained employment records. *Boucher v. Shaw*, 572 F.3d 1087, 1091 (9th Cir. 2009)

According to the FAC, Gillard was terminated effective December 30, 2016, and Gurner notified GEPAZ that he considered himself constructively discharged in January 2017. (Doc. 20 ¶¶ 21, 29.) FEC Logging, however, did not become a member of GEPAZ until March 2017. (¶ 13.) Therefore, FEC Logging could not have hired or fired employees, supervised and controlled work schedules, determined rates of payment, or maintained employment records because it did not become a member of GEPAZ until after Plaintiffs' employment ended.

---

ZR FEC or any of its parent entities. (Doc. 20 ¶ 4.)

### B. AWA and Common Law Claims

The FAC also raises a state statutory claim under the AWA and common law claims. With respect to the AWA claim, Plaintiffs make no specific allegations concerning FEC Logging. (Doc. 20 ¶¶ 67-75.) Instead, Plaintiffs allege that "GEPA[Z] has failed to pay the guaranteed salaries and other emoluments it agreed to pay Plaintiffs for the services they performed." (¶ 72.) Similarly, Plaintiffs' common law claims fail to mention FEC Logging. (¶¶ 76-127.) As discussed at great length, the FAC alleges only that FEC Logging is "successor in interest to *any* and *all* previous members of GEPA[Z]," and ZR FEC is the only member of GEPAZ specifically named in the FAC. (¶¶ 5, 9.) As such, for liability to attach to FEC Logging, it must be through a successor liability theory. Here, even when the allegations in the complaint are taken as true, FEC Logging cannot plausible be found liable.

As previously discussed, successor liability outside the context of FLSA claims attaches where (1) the successor expressly or impliedly agrees to assume liabilities; (2) the transaction is a de facto consolidation or merger; (3) the successor is a mere continuation of the seller; or (4) the transfer of assets was entered for the purpose of fraudulently escaping liability. *Winsor*, 63 P.3d at 1045. Here, there are no allegations that FEC Logging expressly or impliedly agreed to assume ZR FEC's liabilities, merged or consolidated with ZR FEC, operates as a mere continuation of ZR FEC, or succeeded ZR FEC to perpetuate a fraud. Instead, Plaintiffs assert only that "upon information and belief, is successor in interest to any and all previous members of GEPA[Z]," without explaining the claimed information upon which this belief is based. (Doc. 20 ¶ 13.) Accordingly, Plaintiffs' AWA and common law claims against FEC Logging are dismissed.

### IV. Leave to Amend

In the final sentence of their response in opposition to the motion to dismiss, Plaintiffs alternatively request leave to amend should the Court conclude that the FAC fails to state a claim against FEC Logging in its current form. Federal Rule of Civil

Procedure 15(a)(2) requires the Court to "freely give leave when justice so requires." Leave need not be granted, however, "where the amendment of the complaint would cause the opposing party undue prejudice, is sought in bad faith, constitutes an exercise in futility, or creates undue delay." *Ascon Props., Inc. v. Mobil Oil Co.*, 866 F.2d 1149, 1160 (9th Cir. 1989).

At the outset, the Court notes that Plaintiffs previously had an opportunity to amend the complaint but chose not to do so. Specifically, the Court issued an order on May 8, 2017, stating, in relevant part:

> 1. Before the filing of any motion to dismiss under Rule 12(b)(6), the parties must confer in good faith to determine whether the motion can be avoided. Defendant shall explain to Plaintiff the reasons why Defendant believes the complaint fails to state a claim for relief. The parties shall discuss whether the deficiencies identified by Defendant can be cured through an amended complaint. If the parties agree on this point, Plaintiff shall file an appropriate amended complaint in order to avoid the filing of an unnecessary motion to dismiss.
>
> *2. Notwithstanding Plaintiff's belief that the complaint is sufficient to state a claim for relief, or Defendant's belief that the complaint is not curable, if Plaintiff believes that a permissible amendment can cure some or all of the purported deficiencies identified by Defendant, Plaintiff is encouraged to file an amended complaint containing all further allegations Plaintiff could make. This would avoid the need for Plaintiff to seek leave to amend should the Court determine that the motion to dismiss is well taken.*

(Doc. 7 (emphasis added).) Consistent with this order, before filing their motion for judgment on the pleadings, FEC Logging informed Plaintiffs of the issues it planned to raise. (Doc. 39 at 2-3, 8-9.) Rather than amend their complaint to address the perceived defects, Plaintiffs chose to press their FAC and let the Court rule on the issues raised by FEC Logging.

By requesting leave to amend now, Plaintiffs have flouted the Court's prior order. If Plaintiffs can, in fact, allege sufficient facts to cure the defects FEC Logging has identified, their failure to do so after the parties met and conferred has needlessly delayed these proceedings and resulted in the unnecessary expenditure of resources, both by the parties and the Court. To be clear, the Court expects parties to take seriously their

obligations to meet and confer and to make every effort to ensure the just, speedy, and inexpensive resolution of cases. The Court's May 5, 2017 order discouraging motions to dismiss was intended head off precisely this situation.

Plaintiffs' request for leave to amend also violates Local Rule 15.1, which requires a party who moves for leave to amend to "attach a copy of the proposed amended pleading as an exhibit to the motion, which must indicate in what respect it differs from the pleading which it amends[.]" Plaintiffs did not attach a copy of the proposed amended complaint to their response memorandum, nor have they otherwise explained in their response brief what specific supporting allegations they would make to cure the defects identified above. (Doc. 46 at 4.) For all these reasons, Plaintiffs' request for leave to amend is denied.

Plaintiffs may, if they so choose, renew their request for leave to amend if they believe they can allege facts curing the defects identified in this order. If they choose to renew their request, they must do so in a manner that complies Local Rule 15.1. Additionally, because of the current procedural posture of this case, Plaintiffs will need to demonstrate good cause for modifying the scheduling order's deadline for amending pleadings, which has passed. (Doc. 43); Fed. R. Civ. P. 16(b)(4). A showing of good cause will need to explain why Plaintiffs could not have amended their complaint earlier, either by faithfully complying with the Court's May 5, 2017 order, or by attaching a copy of the proposed pleading to their first request.

**IT IS ORDERED** that FEC Logging's motion to dismiss (Doc. 39) is **GRANTED**.

//
//
//
//
//
//

**IT IS FURTHER ORDERED** that Plaintiffs' request for leave to amend (Doc. 46 at 4) is **DENIED** without prejudice. If Plaintiffs wish to renew their request, they must do so by no later than **July 3, 2018**. Any proposed amended pleading must be limited to curing the specific defects identified in this order.

Dated this 26th day of June, 2018.

Douglas L. Rayes
United States District Judge