Laurent R.G. Badoux (AZ Bar No. 020753)
LBadoux@Buchalter.com
Steven R. Schneider (AZ Bar No. 030958)
SSchneider@Buchalter.com
BUCHALTER, a Professional Corporation
16435 North Scottsdale Road, Suite 440
Scottsdale, AZ  85254-1754
Telephone: (480) 383-1800
Fax: (480) 824-9400
*Attorneys for Plaintiffs*

## UNITED STATE DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Martin Gillard; Darren Gurner,<br><br>　　　　　Plaintiffs,<br><br>　　v.<br><br>Good Earth Power AZ, LLC, an Arizona limited liability company; ZR FEC Ltd., a BVI company; Jason Rosamond and Maya Minkova, husband and wife; Alawi Zawawi; Good Earth Power Ltd., a British Virgin Islands company; FEC Logging USA Holdings, LLC, a Delaware limited liability company<br><br>　　　　　Defendants. | Case No. 2:17-cv-01368-DLR<br><br>**PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT RE: FEDERAL LABOR STANDARDS ACT [DOC. 68]**<br><br>**(Oral Argument Requested)** |

 Plaintiffs Martin Gillard and Darren Gurner ("Plaintiffs") file this Response to Defendants' Motion for Partial Summary Judgment Re: FLSA [Doc. 68]. This Response is supported by this Memorandum of Points and Authorities, the Plaintiffs' Controverting Statement of Facts ("CSOF"), the exhibits thereto, and all matters of record.

## MEMORANDUM OF POINTS AND AUTHORITIES

 On summary judgment, the evidence must be viewed in the light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986).

## I.     INTRODUCTION

Plaintiffs, Martin Gillard and Darren Gurner, were individuals providing services in exchange for compensation to individual defendants Minkova and Rosamond, and to corporate defendants GEPAZ and ZR FEC.  Plaintiffs are employees as defined under the FLSA. 29 U.S.C. §203(e).  Defendants are not only employers, but the fulfillment of the federal 4-FRI contract for maintenance of federal forest land is unequivocally an enterprise subject to coverage under the Act for all employees involved. 29 U.S.C. §203(b), (r)(1) and (s)(1). Since each Defendant meets the standard for their status as an employer, they each bear joint and several liability for each violation of the FLSA.

Gillard was admittedly an employee.  Defendants contend that Gurner, however, despite being Managing Director of Arizona operations, was an independent contractor. Applying the economic reality test demonstrates that Gurner was actually an employee.

Defendants claim Plaintiffs are exempt executive employees despite the fact that they were never paid a proper salary. A review of transactions shows that payments to Plaintiffs were random both in amount and timing and never met the guaranteed salary amounts they each were promised, or the duties test.  See 29 C.F.R. §541.2 & 541-602.

It is undisputed that the FLSA applies to any workweek where employees perform any work in the United States, although Defendants seek to minimize the number of workweeks at issue by using a two-year statute of limitations.  Defendants have violated wage and hour laws three previous times in less than 3 years, and were extensively put on notice of their FLSA obligations, including the need to pay a proper salary. They cannot claim ignorance under these facts.

For these reasons, Plaintiffs must be allowed to present their FLSA claims at trial.

## II.     FACTUAL BACKGROUND

GEPAZ LLC holds the largest public forest management contract in the U.S. (Four-Forest Restoration Initiative or "4-FRI Contract"), authorizing the company to

access and thin federal forests, including logging, milling, transportation, soils, biomass and other components relating to an area covering most of northern Arizona and large swaths of New Mexico. CSOF ¶1. It took over that contract in 2013 from the original contractor, Pioneer Forest Products. GEPAZ, at the time, was controlled by the individual named Defendants, who served as its executives, directors and/or agents, and owned at least in part by Rosamond and Zawawi. ZR FEC Ltd. was created later by the individual Defendants, and held a controlling stake in GEPAZ. *Id*. Minkova and Rosamond held VP/CFO/Founder and CEO roles for all entities, and not only controlled the corporate defendants but at least eight other entities handling various parts of the 4-FRI Contract fulfillment. Plaintiffs were hired to assist in fulfilling obligations under that Contract. CSOF ¶4-5.

**Plaintiff Gillard:**

Gillard signed an employment agreement in February 2013 to be CTO of GEP Ltd., when it was pursuing business opportunities in Africa. Rosamond and Minkova asked Gillard, a British national based in England, to provide assistance on preliminary work for the 4-FRI Contract in early 2014. CSOF ¶9. Within a few months, Gillard was working full time on the 4-FRI Contract, and was seconded to the new U.S.-based entity responsible for the 4-FRI Contract. Gillard understood his salary would be paid from funds generated from Arizona operations alone and the new entity would replace GEP Ltd. as his employer.  Gillard did not enter into a consultancy agreement with ZR FEC or GEPAZ and his application for an L-Visa makes clear he functioned as an executive level employee of GEPAZ. CSOF ¶¶ 10, 19-20.

Although promised a salary of $17,500/month, Gillard did not receive timely or complete payments. Gillard had to adjust to receiving only sporadic payments, but he never agreed to a reduction in his salary. From 2014 to the end of 2016, Gillard received payments from various bank accounts in always varying amount. CSOF ¶ 10-13.

Gillard had different roles in conjunction with Arizona operations, including COO. Gillard's wages were not paid via payroll checks, subject to withholdings.  Gillard began work in Arizona with the understanding he had been seconded to work on the operations required for fulfillment of the 4-FRI Contract but was never given a formal secondment agreement to indicate which entity assumed the obligation to pay him.  While seconded, Minkova, Rosamond and Zawawi controlled all Arizona operations and decided from one pay period to the next how much Gillard would be paid. CSOF ¶¶14-15.

**Plaintiff Gurner:**

Rosamond asked Gurner to provide consultancy services to GEP Ltd. around October 2013.  CSOF ¶22-23.  From November 2013 to January 2014, Gurner provided consultancy services to GEP Ltd. at a rate of £10,000 per month.  At the end of January 2014, Rosamond and Gurner agreed on terms of an employment relationship, according to which Gurner would become Managing Director of the soon-to-be-created Arizona entity (GEPAZ/ZR FEC). CSOF  ¶23-24.  Gurner's salary was set at £12,500/month plus incentives, but he was never paid these amounts in full.  He received a payment as large as £23,500 in July 2014 and as small as zero for several months throughout his tenure. CSOF ¶24. As a result, he performed projects for an unrelated banking entity to palliate for unpaid wages.  Gurner maintained the title of Managing Director throughout. CSOF ¶ 25.

Gurner issued Marlin Wood invoices of £10,000 a month to GEP for three (3) months, before being appointed Managing Director.  CSOF ¶40. He expected to be paid his salary by his new employer upon his appointment, per his agreement with Rosamond. Because he was informed that neither GEPAZ nor ZR FEC would create a payroll account, he continued to issue invoices under Marlin Wood for his wages.  Gurner's tax advisor informed him he would be liable in the UK for taxes on invoiced amounts, even if not paid, which created significant tax liability for him for 2014. *Id*.  Issuing invoices that were not getting paid meant he was paying for the privilege of working for GEPAZ, so

Gurner stopped issuing invoices in 2015. Yet, GEPAZ continued to pay him, albeit sporadically, from its business accounts. GEPAZ generally paid Marlin Wood for Gurner's salary, but paid Gurner directly for expense reimbursements. CSOF ¶¶40-1.

## III.   ANALYSIS

Defendants admit they are subject to the FLSA but claim they are not liable for violations of the Act, in whole or in part, for five reasons: (A) Gurner was an independent contractor; (B) Plaintiffs were exempt from overtime as executives; (C) Rosamond and GEP Ltd. employed Plaintiffs, not the other Defendants; (D) Plaintiffs' claims for minimum wage and overtime violations are limited to workweeks when work was performed in the U.S.; and (E) the Court should deem the FLSA violations non-willful despite being Defendants' multiple prior violations. They are incorrect on all points.

### A.   Gurner Was An Employee Under The FLSA.

Courts usually employ a six-factor Economic Reality test to determine whether an individual is an employee or an independent contractor. *Real v. Driscoll Strawberry Assocs.*, 603 F.2d 748 (9th Cir. 1979) (six factors include: (1) extent of control by employer; (2) individual's opportunity for profit and loss; (3) employee's economic investment as compared to employer's; (4) skill set involved; (5) permanence of relationship; and (6) how integral the work is to the business of the employer).

Four of the six factors (1, 3, 5 and 6) strongly favor employment status, especially the first and sixth, which are regarded as central to the analysis. Gurner always reported to Minkova (VP/CFO and director of all entities), Rosamond (CEO of all entities, director and part owner), and Zawawi (owner), CSOF ¶¶ 50-1, since he was below them in the corporate hierarchy, and they had the power to let him go if he failed to meet their expectations or to accept their directions. The first factor supports employment status.

Gurner worked for (and was paid by) GEPAZ and ZR FEC for which he performed functions including financing research, deal transaction and management of assets. He

was introduced as an employee, had company email, business cards, and access rights over corporate bank accounts. CSOF ¶29.[1]  He had oversight, directly or indirectly, over multiple other entities for various parts of the Arizona operations and negotiated the deal that brought International Forestry Products to GEPAZ.  CSOF ¶ 50. This shows Gurner's work was integral to GEPAZ's business.  The sixth factor supports employment status.

The third factor also clearly supports employment status.  The 4-FRI Contract is a sizeable 10-year federal contract, requiring millions of dollars in infrastructure investment and operations costs. Defendants, not Plaintiffs, made the financial investment necessary to secure and operate the 4-FRI Contract; their economic investment dwarfs Gurner's. Gurner was employed for three years as part of the 4-FRI Contract fulfillment, showing the permanence of the relationship. Thus, the fifth factor also supports employment status.

The fourth factor is less relevant but does not support Defendants. Gurner possesses expertise in the forestry market, which explains why Rosamond offered him the Managing Director position. Because Gurner's skills are suited to being both a consultant and a manager, the factor seems neutral. Considering the change in 2014 from a consulting position (later re-characterized as MD work) to the Managing Director position for more money and key incentives, CSOF ¶ 40, the three-month consulting stint should be properly considered as the audition that it was, and the three-year employee tenure as the Parties' economic reality.  If relevant, this factor supports employment status.

Defendants rely almost exclusively on the assertion that the second factor favors an

---

[1] Defendants curiously argue that Gurner is either an independent contractor, or, in the alternative, an executive exempt from overtime requirements.  In other words, Defendants concede that Gurner was an individual that, as a primary duty, was entrusted with managing the enterprise or a recognized subdivision thereof (consistent with the title of Managing Director), customarily and regularly directed the work of two or more employees, and possessed the authority to hire and fire employees, see 29 C.F.R. §541.100, *et seq.*, yet argue he was insufficiently part of the organization to qualify as an employee. The two contentions cannot be reconciled and Defendants offer no precedent to support their oxymoronic argument.

independent relationship.[2] That reliance is unwarranted. An employee's opportunity for profit and loss is not determined by his worth in the marketplace, but by the risk he takes in a common endeavor with the employer. Had Defendants paid Gurner's wages, as promised, he would have had no reason to seek alternate sources of revenue. Although it is true that Gurner generated £150,000 in consulting fees from a bank in 2015 (much less in other years), CSOF ¶ 44, it omits the fact that Gurner had to do so because, although serving as an executive, Gurner was not getting paid his promised pay. Gurner received less than 15% of his expected £200,000 package in 2015 and Defendants should not be allowed to subvert their non-payment of wages into an argument for independent status.

**B.      Plaintiffs Were Not Exempt From Overtime.**

Defendants claim Plaintiffs were executives exempt from overtime.  An employer bears the burden to prove the existence of an exemption to the overtime provision of the FLSA. *See Grage v. Northern States Power Co.*, 813 F.3d 1051 (8th Cir. 2015) (reversing summary judgment on administrative exemption ground because different perceptions of employee's duties should go to jury). Defendants did not meet their burden here.

For an employee to be exempted from overtime as an executive, he must meet the duties test and the salary basis test.  It is debatable whether Plaintiffs meet the duties test,[3] but they obviously did not meet the salary basis test. The salary basis test is a condition to

---

[2] Defendants also argue that Gurner operated independently from a remote location and was not supervised.  The tens of thousands of communications from his GEP e-mail address suggest that all key individuals in the operations of the 4-FRI Contract maintained extensive electronic contact, making physical presence largely immaterial. CSOF ¶45.

[3] By arguing that Plaintiffs were executives, Defendants assert their primary duty was to manage the enterprise or a recognized subdivision thereof, customarily and regularly directed the work of two or more employees of that enterprise, and possessed the authority to hire and fire employees.  See 29 C.F.R. §541.100, *et seq.* It is unclear whether those standards could be met.  Defendants consistently argue they had no employee, which means that neither Plaintiff could have supervised two or more employees (supervising the work of third parties would not qualify). Also, Defendants do not indicate which entity or recognized division thereof each Plaintiff managed.  Although Gurner would admit he provided feedback on individuals, Gillard would not meet that prong of the duties test.

exemption from overtime for an executive and requires that he **must** regularly receive, "each pay period […], a predetermined amount constituting all or part of that employee's compensation…." 29 C.F.R. §541.602(a).  Defendants admit they did not pay Plaintiffs' salaries in full each pay period, but instead unilaterally decided to pay some amount (or sometimes nothing) with a promise to pay the full amount later.  This arrangement is not compliant with the FLSA and was rejected in *Biggs II*, in which the panel held that "late payment" and "nonpayment" were equally prohibited under the FLSA, and found the state of California in violation of the FLSA for paying employees late as a result of a budget impasse. *Biggs v. Wilson*, 1 F.3d 1537, 1540 (9th Cir. 1993) ("The due date, and with it when the employee actually gets paid, would become a moving target. Such a framework would contravene […] the FLSA"); *see Martin v. United States (Martin III)*, 130 Fed. Cl. 578 (2017) (same holding against federal government). Defendants never paid monies owed and certainly never paid a "predetermined amount" on a "due date" as required.

## C.     Minkova, Rosamond, GEPAZ and ZR FEC Are Employers.

Minkova and Rosamond, partners in life and business, were immersed in the handling of the 4-FRI Contract. They served as top executives of ZR FEC and GEPAZ (as well as parent entity GEP Ltd.), had director roles and managed their operations, including personal oversight of Plaintiffs. CSOF ¶¶ 50-59 They are employers under the Act. 29 U.S.C. §203(d); *Boucher v. Shaw*, 572 F.3d 1087, 1091 (9th Cir. 2009) (finding CEO and CFO to be employers).  The corporate defendants are not only employers, 29 U.S.C. §203(b), but the fulfillment of the federal 4-FRI Contract for maintenance of federal forest land is unequivocally a single enterprise subject to coverage under the Act for all employees involved. Under 29 U.S.C. §203(r)(1)&(s)(1), a single enterprise for coverage purposes is a series of related activities that may be performed by multiple individuals or entities either having "unified operations" or "common control" to achieve a "common business purpose."  In this case, the named entities (including FEC Logging before its

acquisition) were part of unified operations for the purpose of fulfilling the 4-FRI Contract and were under the personal control of the individual Defendants. *See Wirtz v. Barnes Grocer Co.*, 398 F.2d 718 (8th Cir. 1968) (common control by executive and interlaced business operations supported single enterprise finding); *Marshall v. San Francisco Hosts, Inc.*, 24 W&H Cas. (BNA) 945 (N.D. Cal. 1979) (intermingling of employee assignments supported single enterprise finding).[4]  Because all Defendants were part of a single enterprise, it is unnecessary to engage in a joint employer analysis.[5]  All Defendants are employers, and each is jointly and severally liable for FLSA violations.

**D.     Work Performed In The United States Is Covered Under The FLSA.**

Under FLSA Section 13(f), if an employee performs any work in the United States during a workweek, all work performed during that week is subject to the requirements of the Act. *See* 29 C.F.R. § 776.7(b).  Over three years, Gillard and Gurner must be deemed covered by the FLSA for 88 and 34 workweeks, respectively, spent in the U.S.[6]

**E.     Defendants' FLSA Violations Were Willful.**

If an employer knew or showed reckless disregard as to whether its conduct violated the FLSA, that employer is engaged in a willful violation of the Act and is subject to a three-year statute of limitations.   29 U.S.C. §255(a).   USDOL cited Defendants three separate times for legal violations in conjunction with their Arizona

---

[4]  Notes from the DOL investigation clearly show that Mr. Rosamond was informed that Wirta Logging was part of the GEPAZ/ZR FEC enterprise and that, as CEO, he was responsible for ensuring proper payment of wages. Appendix A at PL0169932.

[5] Defendants argue they were not joint employers. This is a red-herring. First, they are part of a single enterprise. Second, GEPAZ is a prime federal contractor, and, therefore, all entities engaged in fulfillment of that contract are covered by applicable laws, including the FLSA, SCA and CHWSSA, *inter alia.* Even if a joint employer analysis was relevant, which it is not, the "single enterprise" factors overlap the test for non-completely dissociated employers explained in *Bonnette v. Calif. Health & Welfare Agency*, 704 F.2d 1465 (9th Cir. 1983) (finding county and city joint employers of domestic aid workers).

[6]  During these work weeks, Plaintiffs estimate they worked at least 70 hours on average.

operations,[7] so Defendants cannot avail themselves of the two-year statute of limitations reserved to companies that merely inadvertently violate the FLSA.[8]

It is undisputed that Rosamond was fully aware he had routinely missed payroll payments to Plaintiffs. Rosamond was also personally told on July 12, 2016, by DOL Assistant District Director Nern, that he was obligated to pay Mike Wirta's salary because disputes over contractual debts had to be handled via separate means without impact upon salaries. Appendix A at PL0169932. In 2016, DOL personnel also provided various informational materials that went unread and conducted an informational class for GEPAZ's designated compliance officer, Matt Laessig, that went unheeded. *Id.*[9]

The Ninth Circuit has found that when an employer possessed a specific awareness of the applicability of the FLSA and potential violations, non-compliance is willful under 29 U.S.C. §255(a). *Flores v. City of San Gabriel*, 824 F.3d 890, 905-07 (9th Cir. 2016); *see also Perez v. Oak Grove Cinemas, Inc.*, 68 F. Supp. 3d 1234, 1245 (D. Or. 2014) (entering employee time on two separate payrolls despite awareness of overtime

---

[7] The DOL investigative notes identify three investigations, all of which resulting in increasing back pay and all settled by Rosamond himself, including his approval of a DOL WH-56 form pledging to pay all owed wages and to ensure future compliance with all applicable wage and hour laws, including the FLSA as far back as 2013.

[8] Defendants argue that because the DOL did not identify that Plaintiffs were improperly paid, the failure to pay them in compliance with the FLSA is excusable. Even if the DOL had been focused on such issues and identified Plaintiffs as exempt, the determinations of an investigator cannot be relied upon by the employer in such circumstances. For instance, in *Spires v. Ben Hill County*, the employer argued that its violation of the FLSA could be excused because it relied upon the determination of the local District Director, but the court rejected the argument. 980 F.2d 683 (11th Cir. 1993). Here, not only did Rosamond receive no formal approval on the issue at hand (salary basis test and exemption of bona fide executives) from the investigator, but Gurner is not mentioned in the case file (which is also true of Minkova) and there is no reference to Gillard's salary, or lack thereof, in that file. Thus, the fact that an investigator did not identify issues with Plaintiffs' compensation in this instance in no way excuses the FLSA violations.

[9] As further proof of their willingness to skirt the law, Minkova and Rosamond intentionally excluded employment taxes and social charges from corporate payroll, making only "net" payments to employees, which is consistent with Defendants' failure to pay Plaintiffs (and others) via a proper payroll throughout their tenure. CSOF ¶ 70.

obligations constituted a willful violation).  In light of all of the DOL's efforts to warn Defendants, including in particular Phoenix ADD Nern's remonstrance to Rosamond that the Wirtas' salaries had to be paid in full, Defendants' argument that their violation of the statute was not willful does not meet summary judgment standards, and the Court must allow this issue to be presented to a jury.

## IV.   CONCLUSION

For the foregoing reasons, Defendants' partial motion for summary judgment relating to Plaintiffs' FLSA claims must be dismissed, and Plaintiffs must be allowed to present their claim for violation of minimum wage and overtime under the FLSA to a jury, using the FLSA's three-year statute of limitations.

**DATED** this 31st day of July, 2018.

**BUCHALTER,**
 **A PROFESSIONAL CORPORATION**


By:  */s/ Laurent R.G. Badoux*
Laurent R.G. Badoux, Esq.
Steven R. Schneider, Esq.
LBadoux@Buchalter.com
SSchneider@Buchalter.com
*Attorneys for Plaintiffs*

I hereby certify that I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants, and mailed a copy of same to the following if non-registrants, this 31st day of July, 2018, to:

Robert A. Shull, Esq.
rshull@dickinsonwright.com
Amanda E. Newman, Esq.
anewman@dickinsonwright.com
Dickinson Wright, PLLC
1850 N. Central Avenue, Suite 1400
Phoenix, AZ  85004
*Attorneys for Defendants Good Earth Power AZ, LLC,*
*ZR FEC Ltd., Jason Rosamond, and Maya Minkova*

Joshua T. Greer, Esq.
jgreer@law-msh.com
Moyes Sellers & Hendricks Ltd.
1850 N. Central Avenue, Suite 1100
Phoenix, AZ 85004
*Attorneys for Defendant Good Earth Power AZ, LLC*

*/s/ Lori Harpel*

BUCHALTER
A PROFESSIONAL CORPORATION
SCOTTSDALE

BN 33601637v1