Laurent R.G. Badoux (AZ Bar No. 020753)
LBadoux@Buchalter.com
Steven R. Schneider (AZ Bar No. 030958)
SSchneider@Buchalter.com
BUCHALTER, a Professional Corporation
16435 North Scottsdale Road, Suite 440
Scottsdale, AZ 85254-1754
Telephone: (480) 383-1800
Fax: (480) 824-9400
*Attorneys for Plaintiffs*

# UNITED STATE DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Martin Gillard; Darren Gurner,<br><br>Plaintiffs,<br><br>v.<br><br>Good Earth Power AZ, LLC, an Arizona limited liability company; ZR FEC Ltd., a BVI company; Jason Rosamond and Maya Minkova, husband and wife; Alawi Zawawi; Good Earth Power Ltd., a British Virgin Islands company; FEC Logging USA Holdings, LLC, a Delaware limited liability company<br><br>Defendants. | Case No. 2:17-cv-01368-DLR<br><br>**PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT RE: ARIZONA WAGE ACT [DOC. 69]**<br><br>**(Oral Argument Requested)** |

Plaintiffs Martin Gillard and Darren Gurner (collectively, "Plaintiffs") hereby file their Response to Defendants' Motion for Partial Summary Judgment Re: Arizona Wage Act [Doc. 69]. This Response is supported by the following Memorandum of Points and Authorities, the concurrently-filed Controverting Statement of Facts ("CSOF"), the exhibits thereto, and all matters of record.

## MEMORANDUM OF POINTS AND AUTHORITIES

On summary judgment, the evidence must be viewed in the light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986).

## I. INTRODUCTION

Defendants request summary dismissal of Plaintiffs' second claim for non-payment of timely wages under A.R.S. 23-350, *et seq.* (Arizona Wage (Payment) Act). It is undisputed that Plaintiffs were not paid the wages they were promised and which were due to them on a timely basis and the Court should allow this claim to proceed.

Plaintiffs were individuals providing services in exchange for compensation to individual defendants Minkova and Rosamond, and to corporate defendants GEPAZ and ZR FEC. Plaintiffs are employees under applicable state law, choice of law provisions support proceeding under Arizona law, and Plaintiffs are timely in their demand for payment of wages promised them but unpaid in a timely fashion.

For these reasons, Plaintiffs must be allowed to present their claims to a jury.

## II. FACTUAL BACKGROUND

GEPAZ LLC holds a 10-year public forest management contract with the US Forest Service (Four-Forest Restoration Initiative or "4-FRI Contract"), authorizing the company to access and thin federal forests, including logging, milling, transportation, soils, biomass and other components relating to an area covering most of northern Arizona to the New Mexico border. It took over that contract in 2013. GEPAZ, at the time, was controlled by the individual named Defendants, who served as its directors and/or agent, and owned at least in part by Rosamond and Zawawi. ZR FEC Ltd. held a controlling stake in GEPAZ. CSOF ¶¶ 1, 4-9. Minkova and Rosamond maintained top executive status for all three entities, and not only controlled the corporate defendants but at least eight other entities handling various parts of the 4-FRI Contract fulfillment. CSOF ¶¶ 50-9.

**Plaintiff Gillard:**

Gillard signed an employment agreement in February 2013 to be CTO of GEP Ltd., when it was pursuing business opportunities in Africa. Rosamond and Minkova

asked Gillard, a British national based in England, to provide assistance on preliminary work for the 4-FRI Contract in early 2014. CSOF ¶9. Within a few months, Gillard was working full time on the 4-FRI Contract, and was seconded to the new US-based entity responsible for the 4-FRI Contract. Gillard understood that his salary would be paid via revenues generated from Arizona and the new entity would step in the shoes of GEP. Gillard did not enter into a consultancy agreement with ZR FEC or GEPAZ. CSOF ¶10.

Although promised a salary of no less than $17,500/month, Gillard did not receive timely or complete payments. Gillard had to adjust to receiving only sporadic payments, but he never agreed to a reduction in his salary. From 2014 to the end of 2016, Gillard received payments from various bank accounts in always varying amount. CSOF ¶ 11-12.

Gillard had different roles in conjunction with Arizona operations, including COO. Gillard's wages were not paid via regular payroll checks, subject to withholdings. Gillard began work in Arizona with the understanding he had been seconded to work on the operations required for fulfillment of the 4-FRI Contract but was never given a formal secondment agreement to indicate which entity assumed the obligation to pay him. While seconded, Minkova, Rosamond and Zawawi controlled all Arizona operations and decided from one pay period to the next how much Gillard would be paid. CSOF ¶¶14-15.

**Plaintiff Gurner:**

Rosamond asked Gurner to provide consultancy services to GEP Ltd. around October 2013. CSOF ¶22-23. From November 2013 to January 2014, Gurner provided consultancy services to GEP Ltd. at a rate of £10,000 per month. At the end of January 2014, Rosamond and Gurner agreed on terms of an employment relationship, according to which Gurner would become Managing Director of the soon-to-be-created Arizona entity (GEPAZ/ZR FEC). CSOF ¶23-24. Gurner's salary was set at £12,500/month plus incentives, but he was never paid these amounts in full and was sometimes paid nothing. CSOF ¶ 24. As a result, he performed projects for an unrelated banking entity to palliate

for unpaid wages. Gurner held the title of Managing Director throughout. CSOF ¶ 25.

Gurner issued Marlin Wood invoices of £10,000 a month to GEP for three (3) months, before being appointed Managing Director. He expected to be paid his salary by his new employer upon his appointment, per his agreement with Rosamond. Because he was informed that neither GEPAZ nor ZR FEC would create a payroll account, he continued to issue invoices under Marlin Wood for his wages. However, Gurner's tax advisor informed him he would be liable in the UK for taxes on invoiced amounts, even if not paid. CSOF ¶ 40. Issuing invoices that were not getting paid meant he was paying for the privilege of working for GEPAZ, so Gurner stopped issuing invoices in 2015. Yet, GEPAZ continued to pay him, albeit sporadically, from its business accounts. GEPAZ generally paid Marlin Wood for Gurner's salary, but paid Gurner directly for expense reimbursements. CSOF ¶¶ 40-1.

By the end of their tenure, Plaintiffs were each owed in excess of half a million US Dollars in back wages, not including other compensations. CSOF ¶¶ 21, 32; see CSOF ¶ 42 (Rosamond acknowledged owing Plaintiffs back wages in March 2016). Rosamond informed Gillard he would be terminated in November 2016. In conjunction with that announcement, Rosamond recognized that Gillard was owed extensive back wages and arranged for payments to him of $3,750 every two weeks, starting in December 2016, from either the Seymour Forest Product or Lumberjack business accounts, two entities under the ZR FEC/GEPAZ umbrella and engaged in the fulfillment of the 4-FRI Contract. The payments became infrequent after January 2017, and only one payment was made in each of the months of March and April, after which they stopped completely. CSOF ¶ 21.

## III. ANALYSIS

Although Defendants conveniently claim that GEPAZ was not an employer for purposes of this motion, it claims in other parts of their moving papers that Plaintiffs were executive employees exempt from overtime requirements. For the following reasons,

Defendants' motion must be denied: (A) the Wage Payment Act applies regardless of conflict of laws rules; (B) GEPAZ, ZR FEC and individual defendants were employers under Arizona law as under federal law; (C) Gurner was not an independent contractor for the same reasons highlighted under the FLSA; and (D) the one-year statute of limitations under Arizona law is not a look-back window but a traditional statute of limitations and Plaintiffs are entitled to seek relief for all improper wage payments.

### A. Choice of Law Provisions Do Not Preclude Enforcement Of The Act

Relying upon *Swanson v. The Image Bank, Inc.*, Defendants argue that the laws of England and Wales apply to Gillard's agreement, and that it is, therefore, improper to apply the Arizona Wage Act to his claim for unpaid/untimely paid wages. 77 P.3d 439 (Ariz. 2003). The situation presented in *Swanson* is different than the one at bar. *Swanson* involved a claim of treble damages for a disputed one-time severance provision. In contrast, this case involves a repeated failure to abide by a central tenet of the statute, an employer's obligation to pay recurring wages timely and accurately.

First, Gillard was seconded to an Arizona entity that assumed responsibility for paying his wages. From the time of that secondment in 2014, the entirety of Gillard's work focused on the fulfillment of the 4-FRI Contract, which deals with federal forest lands in this state. All of the monies he received were paid to him in US currency, from a local bank account in the name of GEPAZ or one of the entities providing support for the 4-FRI Contract. Once seconded, the choice of law provision lost its nexus to the selected jurisdiction. See Restatement (2nd) Conflict of Laws §187 (noting absence of geographic nexus as reason to disregard contractual choice of law provision even if clause at issue is properly within ambit of provision). Upon secondment in 2014, Arizona became the sole jurisdiction with any nexus to a dispute as to the payment of wages.

Second, the public policy at issue here is a much more significant factor than the one discussed in *Swanson*, which involved penalty on a one-time severance claim issue.

The primary issue here is the continued failure by Defendants to pay wages on a timely basis. Defendants, while operating in this state, consistently failed to pay Plaintiffs' wages on their due date and in the amount agreed.[1] Sometimes, they made no payment at all. The core of the Wage (Payment) Act is to protect workers and enable them to have recourse in this state when promised wages are not delivered. The statute specifically spells out with what frequency wages are to be paid, namely two or more paydays each month, no more than 16 days apart unless the employee is an exempt employee (which Defendants claim Plaintiffs were) who can be paid monthly, even if that employer is based outside the state. A.R.S. §23-351(A) and (B). Defendants flaunted that obligation vis-à-vis Plaintiffs (and many others).

Allowing the choice of law provision here would be contrary to a "fundamental policy" of the state of Arizona (i.e., that an employee should have the benefit of knowing with certainty when and how much he/she will be paid), which has a "materially greater interest" in its enforcement than Britain. Restatement (2nd) Conflict of Laws §187(2)(b). This is a significantly more fundamental issue than treble damages on a one time severance payment between two contractually equal parties, and nothing in the statute suggests that employers have the right to withdraw themselves from the obligation of timely and accurate payment of wages via contractual provisions. If employers could simply elect to stop making periodic payment of wages to Arizona employees, the protection of the statute (and the statute itself) would be meaningless. An employment contract cannot be construed so as to nullify a statute designed to protect employees.

**B.     Broad Definition of Employment**

A.R.S. § 23-350 provides purposefully broad, all-encompassing definitions of what constitutes an employment relationship. An employer can be an entity or an individual doing business in Arizona through workers in this state or doing work impacting this state.

---

[1] The DOL case file shows they also failed to do so as to a number of other employees.

BUCHALTER
A PROFESSIONAL CORPORATION
SCOTTSDALE

An employee is an individual that performs services requiring performance in whole or in part in Arizona.[2] Not only are GEPAZ and ZR FEC employers as previously described in moving papers relating to the FLSA, it is clear that they serve a single enterprise directed almost exclusively by Minkova and Rosamond, as the two top executives and personal beneficiaries of the work performed by Plaintiffs and others.

Defendants self-servingly claim that only GEP, an entity that has proved beyond the reach of the jurisdiction, was Plaintiffs' employer. Yet, GEP did not provide compensation, however inadequate, to Plaintiffs. Instead, it was GEPAZ and other entities controlled by GEPAZ and ZR FEC and acting in fulfillment of GEPAZ's obligations under the 4-FRI Contract that provided payments to Plaintiffs, including Seymour Forest Products, Lumberjack Mill, GEP Trucking. Through the byzantine layers of corporate misdirections, it is clear that Defendants Minkova and Rosamond, as husband and wife and business partners, essentially ran the Arizona operations as they saw fit, taking liberties to ensure payments from multiple sources to Plaintiffs and in the least amount possible to keep them providing services without quitting, on the promise of a future accounting, which never materialized. Further, the key asset in all of the relationships at issue is the fact that GEPAZ is the sole party in direct contractual privity with the federal government and that the existence of all of the umbrella entities and the work Plaintiffs were made to perform stems from the need to fulfill that federal contract on behalf of GEPAZ, an entity under day-to-day control by Minkova and Rosamond at all times relevant hereto. See CSOF ¶¶ 41-51.

---

[2] Gurner was unequivocally paid via GEPAZ's business account and was also personally reimbursed for expenses through it. Gurner accepted a position as Managing Director for Arizona operations related to the 4-FRI Contract and the exchange of communications as to the terms of that position make no mention of a choice of law provision. As for Gillard, the performance of his employment obligations unequivocally required performance "wholly or partly within this state" for the 4-FRI Contract. A.R.S. § 23-350.

### C. Gurner Was An Employee

Plaintiffs agree that the Wage (Payment) Act is a statute designed by the state legislature to protect employees from improper practices by their employers. As a result, a true independent contractor would not be covered by the statute.[3] Arizona has endorsed the same test as the one used under federal law, namely the Economic Reality Test, for various statutes, including the Minimum Wage Act. Where applying Arizona common law, courts have used the similar Right-To-Control test, which includes seven (7) factors:

1. The duration of the employment;
2. The method of payment;
3. Who furnishes necessary equipment;
4. The right to hire and fire;
5. Who is responsible for workmen's compensation insurance;
6. The extent to which the employer may exercise control over the details of the work; and
7. Whether the work was performed in the usual and regular course of the employer's business.

*See Reed v. Indus. Comm'n.*, 534 P.2d 1090, 1092 (App. 1075).

In contrast, federal courts in the Ninth Circuit employ a six-factor Economic Reality test[4] to determine whether an individual is an employee or an independent contractor. There is, however, little to "no functional difference" between or among the Economic Reality test or the Right-To-Control test, among others. *See Murray v. Principal Fin. Grp., Inc.*, 613 F.3d 943, 945 (9th Cir. 2010).

Plaintiffs hereby reference the analysis provided in their Response to Defendants

---

[3] It stands to reason that if Gurner is not an employee under the Wage (Payment) Act, his claims are not bound by the one-year employment contact limitations. A.R.S. §12-541(3).

[4] *Real v. Driscoll Strawberry Assocs.*, 603 F.2d 748 (9th Cir. 1979) (six factors include: (1) extent of control by employer; (2) individual's opportunity for profit and loss; (3) employee's economic investment as compared to employer's; (4) skill set involved; (5) permanence of relationship; and (6) how integral the work is to the business of the employer). Other Appellate Courts have devised variations on the same test, with varying numbers of factors to consider.

Partial Motion for Summary Judgment relating to FLSA Claims. Factors 1, 6 and 7 of the Right-To-Control test have nearly identical corollaries in the Economic Reality test and, as discussed in the FLSA Motion, strongly favor a finding of employment for Gurner (nearly three years of service, reported to top executives in corporate structure, served as Managing Director and was an integral part of Arizona operations). Addressing the other factors in turn, none of them support independent contractor status.

Gurner was promised a salary and although it was not regularly paid, in sum or frequency, the amounts were paid by GEPAZ and his expenses were reimbursed, as would any other employee. Other entities controlled by Minkova and Rosamond used proper payroll practices for payment of wages, so until mid-2015 Gurner submitted invoices. He stopped and for well over a year thereafter, he continued to receive sporadic payments directly from GEPAZ's Wells Fargo bank account. Consequently the second factor is at best neutral or favoring an employment relationship. CSOF ¶¶40-41; 70.

The third factor strongly supports employment as Gurner provided no tools and made no economic investment in the relationship with GEPAZ/ZR FEC. In contrast, the 4-FRI Contract is a massive 10-year project that required millions of dollars in investment and development costs, none shouldered by Plaintiffs. CSOF ¶¶ 1, 4 & 5.

The fourth factor is at best neutral but more likely supportive of an employment relationship. It is uncontroverted that Rosamond consulted Gurner on certain employment actions, but the decision ultimately to hire or fire, and under what terms, rested with the CEO at all times relevant hereto. CSOF ¶¶ 50-51; 62-63.

The fifth factor strongly supports employment status. Gurner never signed a waiver of worker's compensation coverage or acknowledgment of responsibility to provide his own coverage nor did GEPAZ/ZR FEC ever ask him to execute a declaration of independent status under A.R.S. §23-1601. Further, as a contractor of the federal government, GEPAZ was responsible for ensuring compliance with all applicable safety

laws, rules and regulations to all individuals working in fulfillment of the federal contract. GEPAZ was responsible for ensuring workers' compensation coverage for Gurner and all other service providers and this factor supports Gurner's employment status.

In the aggregate, the factors are neutral to favoring the finding of an employment relationship. Consistent with the broad definitions of employment under the statute and recent modifications to Arizona law,[5] the Court should find, as under the Economic Reality test, that Gurner is an employee under the Wage Act.

### D. The Statute Of Limitations Under The Wage Act Allows Recovery Of All Unpaid Wages

Without any supporting citation,[6] Defendants contend that the statute of limitations precludes recovery of unpaid wages outside of a one-year look back window from the date of filing of the lawsuit (plus private tolling agreement). That assertion is incorrect. Only the statutes of limitations of the FLSA operate as look back windows. Arizona statutes of limitations, including under the Minimum Wage Act, require that an action be brought within one year of its accrual, but does not cap the period of time covered by the claim. Nothing in the Wage (Payment) Act or A.R.S. §12-541 suggests that the limitations at issue functions in any other way than a traditional statute of limitations.

Defendants were let go in late 2016 (Gurner in October; Gillard in November). It is at that time, when their employment ends and they are not made whole for outstanding wages in a timely manner (within the next pay period), that their claim for untimely payment of wages accrues. *Fallar v. Compuware Corp.*, 202 F. Supp. 2d 1067 (D. Ariz. 2002) (holding that the one-year period for bringing an employment claim under Arizona

---

[5] See A.R.S. §23-362(D) (providing for rebuttable presumption of existence of employment relationship, subject to opponent of classification providing clear and convincing evidence to the contrary).

[6] Defendants cite *Redhair v. Kinerk, Beal, Schimdt, Dyer & Sethi, P.C.*, 183 P.2d 544 (App. 2008). Although that case indeed holds that a one-year statute of limitations apply to an employment contract, per A.R.S. §12-541(3), the claim arose in December 2004 and the plaintiff did not file until August 2006 (¶¶ 3-4) and is therefore inapposite.

law only begins to run upon employee termination); *See Apache East, Inc. v. Wiegand*, 580 P.2d 769 (App. 1978) (upholding award of treble damages for unpaid commissions stretching over two years). Thus, by filing in May 2017, Defendants are well within the one-year statute of limitations applicable to employment agreements under Arizona law.

## IV. CONCLUSION

For these reasons, the Court should deny Defendants' Partial Motion for Summary Judgment on Plaintiffs' Claims under the Arizona Wage Act.

**DATED** this 31st day of July, 2018.

                          **BUCHALTER,**
                          **A PROFESSIONAL CORPORATION**

                          By: */s/ Laurent R.G. Badoux*
                                Laurent R.G. Badoux, Esq.
                                Steven R. Schneider, Esq.
                                LBadoux@Buchalter.com
                                SSchneider@Buchalter.com
                                *Attorneys for Plaintiffs*

I hereby certify that I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants, and mailed a copy of same to the following if non-registrants, this 31st day of July, 2018, to:

Robert A. Shull, Esq.
rshull@dickinsonwright.com
Amanda E. Newman, Esq.
anewman@dickinsonwright.com
Dickinson Wright, PLLC
1850 N. Central Avenue, Suite 1400
Phoenix, AZ 85004
*Attorneys for Defendants Good Earth Power AZ, LLC,*

BUCHALTER
A PROFESSIONAL CORPORATION
SCOTTSDALE

BN 33601656v1

1  *ZR FEC Ltd., Jason Rosamond, and Maya Minkova*

2  Joshua T. Greer, Esq.
3  jgreer@law-msh.com
   Moyes Sellers & Hendricks Ltd.
4  1850 N. Central Avenue, Suite 1100
5  Phoenix, AZ 85004
   *Attorneys for Defendant Good Earth Power AZ, LLC*
6
7  */s/ Lori Harpel*

8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

BUCHALTER
A PROFESSIONAL CORPORATION
SCOTTSDALE

12

BN 33601656v1