**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Martin Gillard, et al., | No. CV-17-01368-PHX-DLR |
| Plaintiffs, | **ORDER** |
| v. | |
| Good Earth Power AZ LLC, et al., | |
| Defendants. | |

Plaintiffs Martin Gillard and Darren Gurner allege that Defendants Good Earth Power AZ, LLC ("GEPAZ"), ZR FEC Ltd. ("ZR FEC"), Jason Rosamond, and Maya Minkova, violated the Fair Labor Standards Act ("FLSA") and Arizona Wage Act ("AWA") by failing to pay Plaintiffs minimum wage and overtime. Plaintiffs also raise contract claims related to their employment with Defendants. Before the Court are Defendants' motions for summary judgment (Docs. 67-69), which are fully briefed.[1] For the following reasons, Defendants' motions are granted in part and denied in part.

## **BACKGROUND**

Though their disagreements are plentiful, the parties agree on the following: In early 2013, Gillard entered into a contract to serve as Chief Technology Officer ("CTO") for Good Earth Power Limited ("GEP Ltd"), a British Virgin Islands company

---

[1] The parties requested oral argument, but after reviewing the parties' briefing and the record, the Court finds oral argument unnecessary. *See* Fed. R. Civ. P. 78(b); LRCiv. 7.2(f).

headquartered in Oman, with projects predominately in Africa. While CTO of GEP Ltd, Gillard worked with Rosamond and Minkova, who served as directors and officers of the entity.

In early 2014, Gillard began performing work for GEPAZ and ZR FEC in Arizona. Rosamond was Chief Executive Officer of GEP Ltd, GEPAZ, and ZR FEC. GEPAZ and ZR FEC were separate but related entities to GEP Ltd. GEPAZ was the primary contractor on the United States Forest Service's Four Forest Restoration Initiative ("4-FRI") in Northern Arizona, and ZR FEC oversaw enterprises connected to GEPAZ's operations. Gillard occupied a number of roles within GEPAZ and ZR FEC, though the parties dispute whether this work was being conducted pursuant to Gillard's agreement with GEP Ltd, or under a new, at-will employment contract with GEPAZ and ZR FEC. Gillard was terminated at the end of December 2016.

In late 2013, GEP Ltd contracted with Gurner, through his company Marlin Wood, to conduct consultancy services. Soon after, GEP Ltd deployed Gurner to serve as Managing Director of ZR FEC. The parties agree that this position initially was part of the consulting agreement. Plaintiffs contend, however, that by early 2014, Gurner became an employee of GEPAZ and ZR FEC, continuing on in his role as Managing Director. Gurner served in this role until he was relieved of his day-to-day responsibilities in October 2016.

Due to cashflow issues, a portion of Plaintiffs' wages were deferred. Plaintiffs allege that they never received these deferred wages. In May 2017, Plaintiffs filed this action, raising FLSA, AWA, and contract claims. Defendants filed a counter-claim for conversion. (Doc. 22.) Defendants seek summary judgment on Plaintiffs' claims. (Docs. 67-69.)

## **LEGAL STANDARD**

Summary judgment is appropriate when there is no genuine dispute as to any material fact and, viewing those facts in a light most favorable to the nonmoving party, the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Summary judgment may also be entered "against a party who fails to make a showing sufficient to

establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A fact is material if it might affect the outcome of the case, and a dispute is genuine if a reasonable jury could find for the nonmoving party based on the competing evidence. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. The burden then shifts to the non-movant to establish the existence of a genuine and material factual dispute. *Id*. at 324. The non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts," and instead "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (internal quotation and citation omitted). Conclusory allegations, unsupported by factual material, are insufficient to defeat summary judgment. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). If the non-movant's opposition fails to cite specifically to evidentiary materials, the court is not required to either search the entire record for evidence establishing a genuine issue of material fact or obtain the missing materials. *See Carmen v. S.F. Unified Sch. Dist.*, 237 F.3d 1026, 1028-29 (9th Cir. 2001); *Forsberg v. Pac. N.W. Bell Tel. Co.*, 840 F.2d 1409, 1417-18 (9th Cir. 1988).

## **DISCUSSION**

**I. Preliminary Matters**

At the outset, the Court must address Defendants' request that the Court disregard Plaintiffs' "noncompliant" controverting statement of facts, deem Defendants' statement of facts admitted, and exclude Plaintiffs' declarations. (Docs. 95-97 at 3.)

**A. Controverting Statement of Facts**[2]

---

[2] On July 31, 2017 Plaintiffs filed their response briefs and controverting statement of facts. (Docs. 84-87.) The following day, Plaintiffs filed a notice of errata with respect to their controverting statement of facts and submitted a "corrected controverting statement of facts," (Doc. 89), which became Plaintiffs' operative controverting statement of facts.

This District's Local Rules of Practice impose specific requirements on the form and content of summary judgment motions. "Any party filing a motion for summary judgment must file a statement, separate from the motion and memorandum of law, setting forth each material fact on which the party relies in support of the motion." LRCiv 56.1(a). Each of these facts "must refer to a specific admissible portion of the record where the fact finds support (for example, affidavit, deposition, discovery response, etc.)." *Id.* Likewise:

> Any party opposing a motion for summary judgment must file a statement, separate from that party's memorandum of law, setting forth:
>
> (1) for each paragraph of the moving party's separate statement of facts, a correspondingly numbered paragraph indicating whether the party disputes the statement of fact set forth in that paragraph and a reference to the specific admissible portion of the record supporting the party's position if the fact is disputed; and
>
> (2) any additional facts that establish a genuine issue of material fact or otherwise preclude judgment in favor of the moving party. Each additional fact must be set forth in a separately numbered paragraph and must refer to a specific admissible portion of the record where the fact finds support.

LRCiv 56.1(b). The court may deem a movant's separate statement of facts to be true if the non-movant does not comply with these rules. *See Szaley v. Pima Cty.*, 371 Fed. App'x 734, 735 (9th Cir. 2010).

Defendants contend that Plaintiffs' controverting statement of facts: (1) is not correspondingly numbered to their statement of facts; (2) fails to set out new factual allegations in separate paragraphs; (3) exceeds the page limit; and (4) relies on unauthenticated documents. (Docs. 95-97 at 3.) The Court discusses each in turn.

First, it simply is untrue that Plaintiffs' controverting statement of facts is not correspondingly numbered to Defendants' statement of facts. The one exception is paragraph 77 of Defendants' statement of facts, which Plaintiffs fail to address in a correspondingly numbered paragraph and therefore is admitted for purposes of the pending motions.

---

All discussion herein about controverting statement of facts regards Doc. 89.

Second, Plaintiffs' controverting statement of facts fails to comply with the Local Rules because each correspondingly numbered paragraph does not clearly admit or dispute the fact Defendants asserted. Instead, Plaintiffs often neglect to say whether a factual assertion is admitted or disputed, and instead barrel into a lengthy narrative or argument over the significance of or inferences that may be drawn from facts (for a particularly egregious example, see paragraph 71 of Plaintiffs' controverting statement, which consumes more than a page). Plaintiffs are strongly encouraged to review *Hunton v. American Zurich Insurance Company*, No. CV-16-00539-PHX-DLR, 2018 WL 1182552 (D. Ariz. Mar. 7, 2018), which discusses at length how separate and controverting statements of facts often are misused. In the future, the first word of any correspondingly numbered paragraph should be either "admitted" or "disputed." If a fact is admitted, there should be no follow up. If a fact is disputed, the only follow up should be a citation to the admissible portion of the record where controverting evidence may be found. If the fact is admitted, but Plaintiffs believe additional information is needed for context, that additional evidence should be provided in a separately numbered statement of additional fact precluding summary judgment.

With that said, the Court will not take the extraordinary step of deeming all of Defendants' statements of fact to be admitted. Though Plaintiffs' controverting statement fails to comply with the Local Rules in many of the same ways described in the *Hunton* case, it nonetheless is apparent from the submission that there are genuine and material disputes of fact. The Court prefers, where possible, to resolve cases on the merits and not on technicalities, even when the noncompliant nature of some submissions makes that task particularly difficult.

Next, Defendants contend that Plaintiffs' controverting statement of facts "wildly exceeds" the page limit. In support, Defendants highlight that Paragraph 6(c) Scheduling Order provides that statements of fact "shall not exceed 10 pages in length, exclusive of exhibits." (Doc. 43.) Plaintiffs' controverting statement of facts (not counting the exhibits or certificate of service) spans 24 pages. (Doc. 89.) The Scheduling Order's 10-page limit,

however, applies to the "one motion for summary judgment." (Doc. 43 ¶ 6(b).) Here, upon Defendants' request, the Court allowed "[D]efendants to file 4 motions for summary judgment." (Doc. 64.) Given that the Court's order failed to clarify how allowing 4 summary judgment motions rather than 1 affected the length of the accompanying statement of facts, the Court will not strike the excess pages. With that said, Plaintiffs probably could have substantially reduced the length of their controverting statement of facts had they written it in a manner that strictly complied with the Local Rules, as explained in *Hunton*.

Finally, Defendants' contend that Appendices A-I offered in support of Plaintiffs' controverting statement of facts "are unauthenticated documents." (Docs. 95-7 at 3.) In support, Defendants cite *Orr v. Bank of America* for the proposition that "unauthenticated documents cannot be considered in a motion for summary judgment." 285 F.3d 764, 773 (9th Cir. 2002). Defendants, however, "misread *Orr* []to hold that the Court may not consider unauthenticated documents to support an argument to overcome summary judgment." *Ericson v. City of Phx.*, No. 14-CV-1942-PHX-JAT, 2016 WL 6522805, at *8 (D. Ariz. Nov. 3, 2016). "Although *Orr* held that a non-movant's exhibits were inadmissible for purposes of opposing a motion for summary judgment, the Ninth Circuit later clarified that it is the admissibility of the contents of evidence—not its form—that determines whether evidence is admissible for purposes of avoiding summary judgment. *Id.* (citing *Fraser v. Goodale*, 342 F.3d 1032, 1036-37 (9th Cir. 2003)). The fact that Plaintiffs' appendices may be unauthenticated does not bar their consideration for the limited purpose of opposing Defendants' motions for summary judgment.[3] *See Quanta Indem. Co. v. Amberwood Devs. Inc.*, No. 11-CV-1807-PHX-JAT, 2014 WL 126144, at

---

[3] The Court has serious doubts about whether the appendices are unauthenticated. For instance, Appendices E, F, G, and H are bates stamped ZRFEC and appear to have been provided by Defendants in discovery. Documents produced by a party in discovery are deemed authentic when offered by the party-opponent. *See Maljack Prods., Inc. v. GoodTimes Home Video Corp.*, 81 F.3d 881, 889 n. 12 (9th Cir. 1996). Moreover, Appendix B contains the biographies of GEPAZ's management team. The document appears to be for external use as it contains GEP's logo and the company's office address, telephone number, and website. Under Federal Rule of Evidence 901(b)(1), a document can be authenticated by a witness who wrote it, signed it, used it, or saw others do so. *See* 31 Wright & Gold, Federal Practice & Procedure: Evidence § 7106 (2000).

*16 (D. Ariz. Mar. 26, 2014) (finding that unauthenticated spreadsheets are admissible for limited purpose of opposing motion for summary judgment).

### B. Plaintiffs' Declarations

Defendants contend that Plaintiffs' "declarations should be disregarded as shams." (Docs. 95-97 at 3.) "The general rule in the Ninth Circuit is that a party cannot create an issue of fact by an affidavit contradicting his prior deposition testimony." *Van Asdale v. Int'l Game Tech.*, 577 F.3d 989, 998 (9th Cir. 2009). The sham affidavit rule is necessary because "if a party who has been examined at length on deposition could raise an issue of fact simply by submitting an affidavit contradicting his own prior testimony, this would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact." *Kennedy v. Allied Mut. Ins. Co.*, 952 F.2d 262, 266 (9th Cir. 1991). However, "the sham affidavit rule should be applied with caution because it is in tension with the principle that the court is not to make credibility determinations when granting or denying summary judgment." *Yeager v. Bowlin*, 693 F.3d 1076, 1080 (9th Cir. 2012).

In order to trigger the sham affidavit rule, the Court "must make a factual determination that the contradiction is a sham, and the inconsistency between a party's deposition testimony and subsequent affidavit must be clear and unambiguous to justify striking the affidavit." *Id.* "The non-moving party is not precluded from elaborating upon, explaining or clarifying prior testimony elicited by opposing counsel on deposition and minor inconsistencies that result from an honest discrepancy, a mistake, or newly discovered evidence afford no basis for excluding an opposition affidavit." *Id.*

Here, Defendants attach a chart setting out inconsistencies they believe demonstrate that Plaintiffs' declarations are shams. (Docs. 95-1; 96-1; and 97-1.) However, the statements in the declarations do not clearly and unambiguously contradict the declarants' previous deposition testimony. In fact, some statements have no apparent contradiction to deposition testimony. For instance, Defendants contend that Gurner's deposition testimony contradicts his declaration as to whether he was an employee of GEPAZ. (Doc. 97-1 at 4.) Defendants argument neglects to mention that, elsewhere in his deposition,

when asked directly whether he was an employee of GEPAZ, Gurner answered in the affirmative.

> Q: You were a salaried employee?
>
> A: Correct.
>
> Q: Well, actually, you weren't an employee of any of the entities, were you? You were an employee of Marlin Wood?
>
> A: No. I was an employee of GEPAZ.
>
> Q: You were an employee of GEPAZ?
>
> A: Correct.

(Doc. 71-3 at 56:10-20.)

Likewise, Defendants contend that Gurner's declaration that he was never an employee of GEP Ltd was contradicted by his deposition testimony. (Doc. 97-1 at 3.) The Court disagrees. In Gurner's deposition he admits that he worked under a consultancy agreement with GEP Ltd, not an employment agreement. (Doc. 71-3 at 59:17-61:6.) This answer is consistent with Gurner's declaration and his position at summary judgment that he initially was under a consultancy agreement with GEP Ltd, but later became an employee of GEPAZ and ZR FEC. The sham affidavit rule seeks to strike declarations where the inconsistencies are "so extreme" as to constitute contradiction. This is hardly the case here. As such, the Court declines to strike Plaintiffs' declarations.

**II. Merits**

    **A. Contract Claims (Doc. 67)**

        **1. Existence of a Contract**

To prevail on a breach of contract claim, Plaintiffs must prove the existence of a contract between Plaintiffs and Defendants, a breach of the contract by Defendants, and resulting damages to Plaintiffs. *See Frank Lloyd Wright Found. v. Kroeter*, 697 F. Supp. 2d 1118, 1124 (D. Ariz. 2010). Defendants argue that Plaintiffs cannot establish this first element because their employment contracts were with non-party GEP Ltd. (Doc. 67 at 2.)

In support, Defendants contend that: (1) in 2013, GEP Ltd hired Gillard as its CTO

for its African Projects; (2) in 2014, while still under contract with GEP Ltd, Gillard was seconded to ZR FEC;[4] and (3) Gillard still was under contract with GEP Ltd while seconded to ZR FEC. (*Id.* at 3.) Defendants also contend that: (1) in 2013, GEP Ltd entered into a consultancy agreement with Marlin Wood to market forest residue for entities including ZR FEC; (2) Marlin Wood deployed Gurner as interim managing director of ZR FEC; (3) all work performed by Gurner on behalf of ZR FEC or GEPAZ was done through Marlin Wood's retention as an independent contractor with GEP Ltd; and (4) consistent with the consultancy agreement, invoices for Gurner's work were sent by Marlin Wood to GEP Ltd. (*Id.* at 3-4 n.2.) Based on these facts, Defendants aver that any breach of contract claims on behalf of Gillard or Gurner must arise out of an employment contract or consultancy agreement with GEP Ltd. Moreover, Defendants argue that because they "were not parties to Plaintiffs' employment contracts, they cannot be liable for breaching those contracts or implied covenants within them." (*Id.* at 2.)

In response, Plaintiffs acknowledge the existence of their contracts with GEP Ltd, but argue that at some point during their work with Defendants, implied-in-fact contracts were created with GEPAZ and ZR FEC. (Doc. 86 at 5.) Plaintiffs assert that their new contracts with ZR FEC and GEPAZ "can be ascertained through a combination of communications and review of the [p]arties' conduct." (*Id.*.) Plaintiffs offer five pieces of competing evidence.

First, in November 2014, Rosamond emailed Gurner, then-Managing Director of GEPAZ, directing him to discount Gillard's salary because of operational issues in Arizona. (Doc. 89-1 at 134.) Second, in March 2016, Rosamond sent an email characterizing Gurner and Gillard as "employees," and explaining that money owed to them were "debt owed by ZR FEC" and that ZR FEC was responsible for paying "these out of its earnings." (*Id.* at 162.) Third, GEPAZ's "external communications," including

---

[4] Although neither party defines "seconded," they appear to have a common understanding on the term's meaning. The term "refers to an arrangement made with the mutual consent of the employer and employee whereby the employer makes an employee available under specific agreed arrangements to work with another employer for a specific period of time." Alan S. Gutterman, Business Transactions Solutions § 172:237 (2019).

- 9 -

literature for potential investors, identifies Gurner as GEPAZ's "Managing Director," responsible for "ensur[ing] the sufficient movement of fibre (sic) product from the 4FRI forest restoration area to meet the GEPAZ contractual obligations with the US Forest Service." (Doc. 89-1 at 88.) The literature also identifies Gillard as GEPAZ's "Chief Operating Officer . . . responsible for integrating the operations of the group supply chain." (Docs. 89 ¶ 48; 89-1 at 89.)

Next, Gurner's declaration avers that: (1) from November 2013 to January 2014, he provided consultancy services to GEP Ltd at a rate of £10,000 per month; (2) throughout January 2014, Rosamond and Gurner negotiated his hiring as Managing Director of GEPAZ, which is memorialized in an email exchange; (3) as of February 2014, Gurner was owed a salary of £12,000 per month plus a retention bonus to be paid out at a rate of £6,250 per month for 8 months for his work as Managing Director; and (4) he was paid through GEPAZ's Wells Fargo account. (Doc. 89-1 at 122-127, 177-78, 186.)

Finally, Gillard states in his declaration that, after moving to Arizona to conduct work on the 4-FRI contract: (1) GEP Ltd did not pay him; (2) he did not receive directives from GEP Ltd; (3) he exclusively worked on GEPAZ's 4-FRI contract; and (4) he received payments directly from GEPAZ. (*Id.* at 170 ¶¶ 25-26.) Plaintiffs aver that these facts demonstrate both that their contracts with GEP Ltd were abandoned and that they became employees of GEPAZ and ZR FEC.

In reply, Defendants quarrel about the facts and accompanying inferences that should be drawn. For instance, although Plaintiffs argue that payments from ZR FEC evidence an employment relationship with the entity, Defendants contend that these payments evidence the opposite because they were "on behalf of GEP Ltd." (Doc. 97 at 6.) At summary judgment, however, the Court is to draw all inferences in favor of the non-moving party. A jury reasonably could find that Plaintiffs' contracts with GEP Ltd were abandoned, and that GEPAZ and ZR FEC became Plaintiffs employers.

With that said, summary judgment in favor of Rosamond and Minkova is appropriate. As Defendants correctly note, Plaintiffs' response "only argues that

- 10 -

[Plaintiffs] contracted with ZR FEC and GEPAZ—not Rosamond or Minkova." (*Id.* at 6-7.) Nor do Plaintiffs put forth evidence demonstrating that a contractual relationship existed with Rosamond and Mikova, personally.

### 2. Statute of Limitations

Alternatively, Defendants contend that Plaintiffs' contract claims are untimely to the extent they are based on alleged breaches that occurred before May 4, 2016 (as to ZR FEC) and April 6, 2016 (as to GEPAZ).[5] (Doc. 67 at 11.)

Under Arizona law, claims for "breach of an oral or written employment contract" "shall be commenced . . . within one year after the cause of action accrues[.]" A.R.S. § 12-541(3). "Although 'accrual' is not defined in this section, [Arizona] courts have applied the common law 'discovery rule' to interpret that term within statutes of limitations." *Stulce v. Salt River Project Agr. Imp. & Power Dist.*, 3 P.3d 1007, 1010 ¶ 10 (Ariz. Ct. App. 1999). "Under the discovery rule, a cause of action accrues when the plaintiff knew or by the exercise of reasonable diligence should have known of the defendants' conduct and therefore the statute of limitations does not begin to run until that time." *Logerquist v. Danforth*, 932 P.2d 281, 284 (Ariz. Ct. App. 1996) (internal quotation and citation omitted). "The relevant inquiry is when did a plaintiff's knowledge, understanding, and acceptance in the aggregate provide [ ] sufficient facts to constitute a cause of action." *Little v. State*, 240 P.3d 861, 864 ¶ 9 (Ariz. Ct. App. 2010) (internal quotation and citation omitted). An employee is deemed to have discovered an employer's breach of contract with respect to payment of wages when the employee learns that it will not receive those wages. *See Day v. LSI Corp.*, 174 F. Supp. 3d 1130, 1155, 67-68 (D. Ariz. 2016).

The parties agree that at some point during their relationship an agreement was reached to defer payment of a portion of Plaintiffs' wages.[6] (Docs. 71-1 ¶ 52; 89-1 at 188 ¶ 49.) Upon Plaintiffs' termination, however, they had yet to receive these deferred wages.

---

[5] According to Defendants, these dates differ because of a tolling agreement Plaintiffs entered into with GEPAZ.

[6] The parties disagree about the specifics of the deferral agreement.

Based on these facts, a reasonable juror could find that Plaintiffs did not discover that they would not receive their deferred wages until the close of the pay period following termination. Arguably, this discovery date is even later given Rosamond's post-termination assurances that Plaintiffs' would be "made whole." (Doc. 89-1 at 189 ¶ 52.)

Claims for wages that were not deferred, however, would have accrued when those payments were due and not made. *See Zaki v. Banner Pediatric Specialists LLC*, No. 16-CV-1920-PHX-DLR, 2017 WL 105991, at *3 (D. Ariz. Jan. 10, 2017) (citing A.R.S. § 23-351(C)). Because no party has presented a clear itemization, a question of fact exists as to which wages were deferred. Accordingly, summary judgment is denied.

### B. FLSA Claims (Doc. 68)

Defendants contend that they are entitled to summary judgment on Plaintiffs' FLSA claims for the following reasons: (1) Gurner was an independent contractor not subject to the FLSA; (2) Plaintiffs were executives exempt under the FLSA;[7] and (3) ZR FEC, GEPAZ, and Minkova cannot be liable as joint employers. Defendants also seek to limit the scope of Plaintiffs' FLSA claims, arguing that Plaintiffs' claims are limited to workweeks spent within the United States and within the two-year statute of limitations. The Court discusses each argument in turn.

#### 1. Independent Contractor

The FLSA mandates that employers pay employees certain minimum and overtime wages, and employ employees for no more than a certain amount of hours each week. 29 U.S.C. § 206-207. "The FLSA creates a private right of action against any employer who violates § 206 (the minimum wage requirement) or § 207 (the overtime compensation requirement)." *Dyrahuag v. Tax Breaks Inc.*, No. 13-CV-1309-PHX-BSB, 2015 WL 13567067, at *5 (D. Ariz. Sept. 15, 2015.)

Defendants contend that they are entitled to summary judgment with respect to Gurner because he was an independent contractor not subject to the FLSA. (Doc. 68 at 7.) Pursuant to the FLSA, "employee" is defined as "any individual employed by an

---

[7] This is an alternative argument with respect to Gurner. That is, if Gurner is not an independent contractor, then he is an executive exempt from FLSA.

- 12 -

employer," § 203(e)(1), while "employer" is defined as "any person acting directly or indirectly in the interest of an employer in relation to an employee," § 203(d). Courts have adopted "an expansive interpretation of 'employer' and 'employee' under the FLSA, in order to effectuate the broad remedial purposes of the Act." *Real v. Driscoll Strawberry Assocs., Inc.*, 603 F.2d 748, 754 (9th Cir. 1979). Consequently, employees are those "who as a matter of economic reality are dependent upon the business to which they render service." *Id.*

Courts consider a number of factors to assess the economic reality between the alleged employee and employer for purposes of the FLSA, including:

> (1) the degree of the alleged employer's right to control the manner in which the work is to be performed;
>
> (2) the alleged employee's opportunity for profit or loss depending upon his managerial skill;
>
> (3) the alleged employee's investment in equipment or materials required for his task, or his employment of helpers;
>
> (4) whether the service rendered requires a special skill;
>
> (5) the degree of permanence of the working relationship; and
>
> (6) whether the service rendered is an integral part of the alleged employer's business.

*Id.* The presence of any one of the above factors is not dispositive of whether an employee/employer relationship exists; rather, whether such a relationship exists depends "upon the circumstances of the whole activity." *Id.* Importantly, a contractual label does not determine employment status, nor does the subjective intent of the parties to a labor contract override the economic realities reflected in the factors described above.[8] *Id.* at 755.

The Court finds that material disputes of fact and inferences to be drawn from the

---

[8] Because neither the contractual label nor subjective intent of the parties can override the economic realities, the Court must assess all six factors, and may not fall back on its determination that a question of fact exists as to whether Gurner had an employment contract with GEPAZ and ZR FEC for purposes of Plaintiffs' contract claims.

- 13 -

facts exist concerning the above employee/contractor factors that preclude summary judgment. For instance, the second factor depends on Gurner's "opportunity for profit or loss depending upon his managerial skill." *Real*, 603 F.2d at 754. Courts look at whether the putative employee has the "freedom to develop their own business." *Iontchev v. AAA Cab Inc.*, No. 12-CV-256-PHX-ROS, 2015 WL 1345275, at *5 (D. Ariz. Mar. 18, 2015). Defendants note that Gurner also consulted for a Swedish financial institution, Skandinaviska Enskilda Banken AB ("SEB"), during the time he worked with ZR FEC and GEPAZ, earning approximately £150,000 per year. (Doc. 71 ¶¶ 43-44.) The parties offer competing rationales for why this occurred. According to Defendants, Gurner was able to consult with SEB because he worked as a non-exclusive consultant for GEP Ltd. In contrast, Plaintiffs argue that Gurner engaged in consulting work with SEB because he "was not getting paid his promised salary" from GEPAZ and ZR FEC. (Doc. 84 at 7.) Plaintiffs argue, convincingly, that Defendants, "should not be allowed to subvert their non-payment of wages into an argument" that Gurner was a consultant. (*Id.*)

There also is competing evidence regarding how integral Gurner was to GEPAZ and ZR FEC. For example, Defendants contend that he worked "intermittently" and that "the services he rendered were not integral." (Docs. 68 at 8; 71-1 at 6 ¶ 36.) On the other hand, Plaintiffs contend that Gurner was responsible for "daily operations" and negotiated the partnership with International Forest Product. (Doc. 89-1 at 181, 183-84 ¶¶ 20, 30.) Because of these factual disputes, summary judgment is denied.[9]

### 2. Bona Fide Executive

Next, Defendants contend that Plaintiffs were exempt from the FLSA's wage and

---

[9] Summary judgment also is inappropriate given that some of the factors seem to weigh in favor of an employment relationship. For example, the third factor depends on the Gurner's "investment in equipment or materials required for his task, or his employment of helpers." *Real*, 603 F.2d at 754. Although not entirely clear what equipment or materials are required for the task of Managing Director, Gurner's flights and travel expenses were reimbursed by the company. Moreover, there is no evidence that Gurner could employ helpers, allowing him the freedom to consult for other companies. *see Iontchev*, 2015 WL 1345275, at *6 ("The [cab] drivers are also free to hire 'helpers' in the form of relief drivers. These additional drivers allow the drivers freedom to craft their own work schedules and maximize usage of the leased vehicles.").

- 14 -

hour requirements because they were bona fide executive employees. (Doc. 68 at 8.) Anyone "employed in a bona fide executive, administrative, or professional capacity," is exempt from wage and hour requirements by the FLSA. 29 U.S.C. § 213(a)(1). A bona fide executive is one who is:

> (1) Compensated on a salary basis at a rate of not less than $455 per week . . . ;
>
> (2) Whose primary duty is management of the enterprise in which the employee is employed or of a customarily recognized department or subdivision thereof;
>
> (3) Who customarily and regularly directs the work of two or more other employees; and
>
> (4) Who has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight.

29 C.F.R. § 541.100(a). FLSA exemptions are narrowly construed against employers and "[a]n employer who claims an exemption from the FLSA has the burden of showing that the exemption applies." *Webster v. Pub. Sch. Emp. of Wash.*, Inc., 247 F.3d 910, 914 (9th Cir. 2001) (internal quotation and citation omitted).

The Court finds that Defendants have not met their burden of showing the exemption applies. With respect to the first element, Defendant argues that Plaintiffs are paid salaries with a rate greater than $455 per week. "An employee will be considered to be paid on a 'salary basis' within the meaning of these regulations if the employee regularly receives each pay period on a weekly, or less frequent basis, a predetermined amount constituting all or part of the employee's compensation, which amount is not subject to reduction because of variations in the quality or quantity of the work performed." 29 C.F.R. 541.602(a).

Based on the evidence presented, there is a genuine issue of fact as to whether Plaintiffs "regularly" received pay, weekly or otherwise. In his declaration, Gillard states that "[a] review of payments made to [him] shows as a matter of fact that [he] was never paid with any regularity as to timing[.]" (Doc. 89-1 at 171 ¶ 30.) Likewise, Gurner

contends that he "never received consistent payments of compensation . . . at any point during [his] tenure as Managing Director." (*Id.* at 181 ¶ 20.) Gurner also stated that the "suggestion that [he] would receive consistent period payments from GEPAZ to defray outstanding amounts owed to me never materialize." (*Id.* at ¶ 21.)

There is also a genuine issue of fact as to whether any such payments were of "a predetermined amount" constituting at least "part" of Plaintiffs' compensation. In his declaration, Gillard proffers that: "[he] was routinely paid less or nothing at all during certain pay periods," and that "[he] received payments . . . always [in] varying amounts, including some above and below $1250 a week." (*Id.* at 166 at ¶¶ 8-9.) Gurner echoed this position, stating that he "received payments ranging from a maximum of £ 23,500 on one occasion . . . [to] a minimum of zero on numerous occasions during [his] tenure." (*Id.* at 178 ¶ 8.) Based on the competing evidence presented by Plaintiffs as to whether they "regularly" received "predetermined amounts," summary judgment is denied.

### 3. Joint Employers

Next, Defendants argue that, to the extent Plaintiffs are subject to FLSA and Defendants are held liable, ZR FEC, GEPAZ, and Minkova cannot be held liable as "joint employers."[10] (Doc. 68 at 9.) Two or more employers may be joint employers of an employee, with each employer having individual liability for compliance with the FLSA. *Bonnette v. Cal. Health and Welfare Agency*, 704 F.2d 1465, 1469 (9th Cir. 1983). Under the FLSA, "[a] determination of whether the employment by the employers is to be considered joint employment . . . depends on the facts in the particular case." 29 C.F.R. § 791.2(a). In this Circuit, "the concept of joint employment should be defined expansively under the FLSA." *Chao v. A-One Med. Servs., Inc.*, 346 F.3d 908, 917 (9th Cir. 2003).

To determine whether an entity qualifies as a joint employer, the Ninth Circuit applies an "economic reality" test. *See Torres-Lopez v. May*, 111 F.3d 633, 639 (9th Cir. 1997). That test looks to the "circumstances of the whole activity," and specifically

---

[10] Plaintiffs' complaint also alleges that Rosamond is jointly liable for FLSA violations. (Doc. 20 ¶ 50.) Defendants motion does not move for summary judgment as to Rosamond, however. (Doc. 68 at 9.)

examines four factors. *Bonnette*, 704 F.2d at 1469-70. Courts ask "whether the alleged employer: (1) had the power to hire and fire the employee[ ], (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Id.*

Defendants contend that GEP Ltd had the hiring and firing power, supervised conditions of payment, determined payment rates and methods, and maintained employment records. Plaintiffs, however, presented facts that dispute the existence of each factor. For instance, Plaintiffs' declarations indicate that Rosamond, as CEO for GEPAZ and related entities, and Minkova "had the authority to hire, fire, supervise, pay and oversee me as to all employment responsibilities." (Doc. 89-1 at 169, 185 ¶¶ 20, 35.) Therefore, the Court denies Defendants' motion for summary judgment on this issue.

### 4. Work Performed Outside the United States

FLSA wage and hour protections do not apply "with respect to any employee whose services during the workweek are performed in a workplace within a foreign country . . . ." 29 U.S.C. § 213(f). According to Defendants, "Gurner spent portions of 36 workweeks in the U.S. and Gillard spent portions of 77 workweeks," as such, there FLSA claims should be limited to those periods. (Doc. 68 at 10.) Plaintiffs agree they can only recover on FLSA claims for weeks in which work was performed in the U.S., and Plaintiffs agree on the dates in which they were in the U.S. working, but they dispute how GEPAZ and ZR FEC defined workweeks for its employees.[11] (*Compare* Doc. 71 ¶ 56 *with* Doc. 89-1 at 170, 186 ¶¶ 24, 40.) Because there is a genuine dispute of fact as to how the entities defined their workweeks, the Court is unable to determine how many workweeks qualify. As such, summary judgment is denied on this issue.

### 5. Statute of Limitations

The FLSA imposes a two-year statute of limitations for actions brought to recover damages for an employer's failure to pay the federal minimum wage or overtime pay. *Flores v. City of San Gabriel*, 824 F.3d 890, 906 (9th Cir. 2016) (citing 29 U.S.C. § 255(a)).

---

[11] For purposes of its motion, Defendants used the dates provided by Plaintiffs in interrogatory responses. (Doc. 71-5 at 3-5.)

Where the plaintiffs' claims arise from an employer's willful violation of the FLSA, the statute of limitations may be extended to three years. *Id.* "A violation is willful if the employer knew or showed reckless disregard for the matter of whether its conduct was prohibited by the FLSA." *Id.* (internal quotation and citation omitted). Reckless disregard includes "failure to make adequate inquiry into whether conduct is in compliance" with the FLSA, 5 C.F.R. § 551.104, and an employer thus acts willfully by "disregard[ing] the very 'possibility' that it was violating the statute." *Alvarez v. IBP, Inc.*, 339 F.3d 894, 908-09 (9th Cir. 2003). The Court, however, will not "presume that conduct was willful in the absence of evidence." *Id.* at 909.

Defendants argue that Plaintiffs cannot prove a willful violation of the FLSA and, therefore, summary judgment should be entered on all claims accruing more than two years prior to the filing of Plaintiffs' suit.

As evidence of willfulness, Plaintiffs point the Court to prior Department of Labor ("DOL") FLSA investigations into Defendants on the 4-FRI contract. Defendants argue that the DOL investigations are irrelevant because they "did not raise any issues related to . . . Plaintiffs." (Doc. 68 at 11.) Even if the investigation did not raise issues about Plaintiffs, however, it still is relevant to the willfulness inquiry. Where, as here, an employer has received actual knowledge of FLSA requirements from a prior DOL investigation, a reasonable jury could conclude that the employer acted in reckless disregard of the FLSA in subsequent violations. *See Chao*, 346 F.3d at 919; *Baker v. DARA II, Inc.*, No. 6-CV-2887-PHX-LOA, 2008 WL 191995, at *7 (D. Ariz. Jan. 22, 2008). As such, summary judgment is denied on this issue.

**C. AWA Claims (Doc. 69)**

Defendants also seek summary judgment on Plaintiffs' AWA claims, offering four reasons.

First, Defendants argue that, under the AWA, GEPAZ cannot be held liable "for unpaid wages to an employee who was working under a contract or agreement with a different party." (Doc. 69 at 7.) Second, Defendants argue that Plaintiffs cannot recover

under the AWA because of the choice-of-law provisions in their contracts with GEP Ltd. (*Id.* at 5-7.) Both arguments are a restatement of Defendants' defense to Plaintiffs' breach of contract claims—Defendants' cannot be held liable for Plaintiffs' unpaid wages because they are not party to Plaintiffs' employment contract with GEP Ltd. For the reasons stated above, the Court finds a genuine issue of material fact as to whether GEPAZ and ZR FEC employed Plaintiffs.

Next, Defendants contend that Gurner is an independent contractor "with no right to assert a claim under" the statute. (*Id.* at 8-9.) The factors for determining whether a person is an independent contractor under the AWA and the FLSA "are functionally the same." *Doe v. Swift Trans. Co., Inc.*, No. 10-CV-899-JWS, 2017 WL 67521, at *4 n.30 (D. Ariz. Jan. 6, 2017) (comparing *Real* factors with *Santiago* factors). As such, for the reasons stated above, the Court denies summary judgment on this issue.

Finally, Defendants contend that the majority of Plaintiffs' AWA claim is barred by the one-year statute of limitations. *See* A.R.S. § 12-541(3). Plaintiffs allege that they are entitled to recover treble the amount of their unpaid wages due at the time of their termination pursuant to the AWA. (Doc. 20 ¶¶ 68-69.) Plaintiffs were terminated in late 2016, and A.R.S. § 23-353(A) required Defendants to pay Plaintiffs' final wages "within seven working days or the end of the next regular pay period, whichever is sooner." Plaintiffs filed this action in May 2017, less than a year after their terminations. Therefore, Plaintiffs' statutory unpaid wages claims are not time-barred. *See Zaki*, 2017 WL 105991, at *5. Accordingly,

**IT IS ORDERED** that Defendants' motion for summary judgment on Plaintiffs' breach of contract claims (Doc. 67) is **GRANTED in part** and **DENIED in part** as follows:

1. **Granted** with respect to Defendants Rosamond and Minkova;
2. **Denied** with respect to Defendants GEPAZ and ZR FEC.

**IT IS FURTHER ORDERED** that Defendants' motion for summary judgment on Plaintiffs' FLSA claim (Doc. 68) is **DENIED**.

1 **IT IS FURTHER ORDERED** that Defendants' motion for summary judgment on Plaintiffs' AWA claims (Doc. 69) is **DENIED**.

**IT IS FURTHER ORDERED** that the parties shall appear telephonically on **March 26, 2019 at 2:00 p.m.** in Courtroom 606, 401 West Washington Street, Phoenix, AZ 85003 before Judge Douglas L. Rayes to discuss setting a trial date and other pre-trial deadlines.

Counsel for Plaintiffs shall make the necessary arrangements for the conference call. All parties participating in the conference call shall do so via a landline only. The use of cellular phones will not be permitted.

Dated this 19th day of March, 2019.

Douglas L. Rayes
United States District Judge